### SCHWARTZ v. UNITED STATES.
### No. 9760.

Circuit Court of Appeals, Ninth Circuit.
June 30, 1941.

O'Connor, Gray & Strock, by William V. O'Connor, of Los Angeles, Cal., for appellant.

Wm. Fleet Palmer, U. S. Atty., and Ralph E. Lazarus and Russell K. Lambeau, Asst. U. S. Attys., all of Los Angeles, Cal., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Hans Schwartz is a native of the one time independent nation of Austria or Austria-Hungary, and migrated to the United States, where he petitioned for citizenship. The United States District Court denied his petition, and he appeals.

Because the naturalization laws require certain time elements and because such laws have been amended during the period of time necessary to be considered in this appeal, we state the principal facts together with changes in the statute chronologically.

Oct. 20, 1933—Appellant entered the United States as a permanent resident.

Apr. 13, 1934—Appellant filed his Declaration of Intention.

Jan. 15, 1936—Appellant departed for England in employment by an American firm engaged in foreign commerce.

June 25, 1936—Naturalization Act amended so as to provide for exemption of certain aliens from conclusive presumption that a year's absence from the United States breaks continuity of required residence.

Sept. 20, 1937—Appellant returned to the United States.

June 29, 1938—Naturalization Act amended.

June 12, 1939—Appellant applied to Secretary of Labor for her finding that he had been abroad on foreign commerce, etc.

Oct. 31, 1939—Appellant filed his petition for naturalization.

Dec. 20, 1939—Appellant was found by the Secretary of Labor to have been abroad on foreign commence, etc.

For a clear understanding of the case, we briefly outline the various legislative enactments material to the cause before us.

The basic Act was enacted on June 29, 1906, c. 3592, 34 Stat. 596. The naturalization laws may be found in Title 8, ch. 9, § 351 et seq., U.S.C.A., but in view of the many legislative changes during the period involved herein, we refer to the Statutes instead of the U.S.C.A. citation. Section 4, subdivision 4 of that Act read, "It shall be made to appear to the satisfaction of the court admitting any alien to citizenship that immediately preceding the date of his application he has resided continuously within the United States, five years at least   *   *   *".

Under that Act all questions as to whether or not an absence from the United States constituted a break in the continuity of the alien's residence were left to the Court at the time of the hearing.

On March 2, 1929, c. 536, 45 Stat. 1512, the above-quoted section of the 1906 Act was amended to read,

"Fourth. No alien shall be admitted to citizenship unless (1) immediately preceding the date of his petition the alien has resided continuously within the United States for at least five years   *   *   *   (2) he has resided continuously within the United States from the date of his petition up to the time of his admission to citizenship   *   *   *.

"If an individual returns to the country of his allegiance and remains therein for a continuous period of more than six months and less than one year during the period immediately preceding the date of filing the petition for citizenship for which continuous residence is required as a condition precedent to admission to citizenship, the continuity of such residence shall be presumed to be broken, but such presumption may be overcome   *   *   *. Absence from the United States for a continuous period of one year or more during the period immediately preceding the date of filing the petition for citizenship for which continuous residence is required as a condition precedent to admission to citizenship shall break the continuity of such residence."

This was the law at the time of the appellant's departure for Europe. Only his return to the United States within a year from the date of his departure [January 15, 1936] would have avoided a conclusive presumption that a fatal break in the continuity of his residence had occurred.

However, within this year period and on June 25, 1936, the Congress passed an additional amendment to the 1906 Act, c. 811, 49 Stat. 1925, by which the following language was added to the March 2, 1929 amendment, separating the two with a comma: "except that in the case of an alien declarant for citizenship * * * employed by an American firm or corporation engaged in whole or in part in the development of foreign trade and commerce of the United States * * * no period of residence outside the United States shall break the continuity of residence if (1) *prior to the beginning of such period* (whether such period begins before or after his departure from the United States) the alien has established to the satisfaction of the Secretary of Labor that his absence from the United States for such period is to be * * * engaged in the development of such foreign trade and commerce * * *, and (2) such alien proves to the satisfaction of the court that his absence from the United States for such period has been for such purpose." [Emphasis supplied.]

■ This language eliminated the conclusive presumption of a break in the continuity of residence after a year's absence, where during such absence the alien declarant was engaged in the development of foreign trade and commerce of the United States. This relaxation of the continuity requirement, however, could only be enjoyed by complying with the condition precedent provided, to-wit, the establishment to the satisfaction of the Secretary of Labor, prior to the commencement of the period of absence to be excused, that such absence was to be caused by employment in foreign trade and commerce.

In order to protect persons who might already be in the employ of American firms in foreign trade and commerce, a new Section, Section 2 of the 1936 Amendment, 8 U.S.C.A. § 382a, was added, reading, "No period of residence outside the United States *during the five years immediately preceding the enactment of this Act* [June 25, 1936], shall be held to have broken the continuity of residence required by the naturalization laws if the alien proves to the satisfaction of the Secretary of Labor and the court that during all such period of absence he has been under employment by * * * such * * * American firm or corporation, described in Section 1 hereof [section 382 of this title] * * *". [Sec-

tion 1 was the section amending the 1929 amendment, and above quoted.] [Emphasis supplied.]

Thus at the time of this 1936 amendment, it was unnecessary for appellant to do more than to prove to the satisfaction of the Secretary of Labor and the court that his absence was because of his employment in foreign trade and commerce, so far as it applied to his absence prior to the enactment of the 1936 amendment. No time limit was set for his application for the Secretary of Labor's certificate covering this period, and we therefore take it that the certificate supplied by the Secretary of Labor on December 20, 1939, satisfied the law as to the appellant's absence from the United States from the date of his departure until June 25, 1936.

■ But, what about the period of absence subsequent to June 25, 1936? As will be seen from the above chronology of events, he did not return to the United States until September 20, 1937, approximately a year and three months later. As to this period Section 2 of the 1936 amendment is inapplicable.

We assume without deciding [and this is the view most favorable to appellant] that as of the moment of the enactment of the 1936 amendment it was as if he was just commencing his period of absence, all prior absence being excused. In this view he would have one more year of absence before the conclusive presumption would come into effect. It could well be argued under the wording of the 1936 amendment that as to the period subsequent to June 25, 1936, to be excused he must have established the purpose of his absence to the satisfaction of the Secretary of Labor prior to its commencement. However, we find it unnecessary to decide this point, and again assume the view must favorable to appellant, that his application to the Secretary of Labor for her certificate would have been timely had it been made at any time prior to the expiration of this year *free period,* or prior to June 25, 1937.

It will be noted from the above chronology that no application was made by the appellant until June 12, 1939, almost two years later.

On June 29, 1938, the Naturalization Act was again amended, c. 819, 52 Stat. 1247, 8 U.S.C.A. § 382, changing the second paragraph of the fourth subdivision of Section 4 of the 1906 Act as amended by

the 1936 amendment [quoted above, and commencing with the words "If an individual," etc.] to read as follows:

"Absence from the United States for a continuous period of more than six months and less than one year during the period for which continuous residence is required for admission to citizenship, immediately preceding the date of filing the petition for naturalization, or during the period between the date of filing the petition, and the date of final hearing, shall be presumed to break the continuity of such residence, but such presumption may be overcome * * *. Absence from the United States for a continuous period of one year or more during the period for which continuous residence is required for admission to citizenship immediately preceding the date of filing the petition for naturalization * * * shall break the continuity of such residence, except, that in the case of an alien—

"(a) who has been lawfully admitted into the United States for permanent residence,

"(b) who has resided in the United States for at least one year thereafter, and

"(c) who has made a declaration of intention to become a citizen of the United States, who shall be deemed an eligible alien for the purposes of this paragraph [section] and who thereafter has been sent abroad as an * * * employee of a firm or corporation engaged in the development of foreign trade and commerce of the United States, * * * or any such eligible alien as above defined who has proceeded abroad temporarily and has within a period of one year of his departure from the United States become an employee * * * of such an American firm or corporation, no such absence shall break the continuity of residence in the United States if—

"(1) *Prior to the beginning of such absence, or prior to the beginning of such employment* * * * such alien has established to the satisfaction of the Secretary of Labor that his absence for such period is to be * * * engaged solely or principally in the development of such foreign trade and commerce * * *; and

"(2) Such alien proves to the satisfaction of the Court that his absence from the United States for such period has been for such purpose." [Emphasis supplied.]

It is obvious that the purpose of this amendment was to narrow the class of aliens whose absence from the United States for over a year might be excused. Under the 1938 amendment, in order to fall within the exemption, the alien must have been lawfully admitted into the United States for permanent residence, must have resided in the United States for at least a year thereafter, must have made his declaration of intention, and *thereafter* must have been sent or gone abroad, etc., all requirements which were absent in the 1936 amendment. The requirement still remained that the alien must have established the purpose of his contemplated absence to the satisfaction of the Secretary of Labor prior to the beginning of his absence or prior to his engaging in the foreign trade, etc.

In order to protect alien declarants who might not fall within the class as limited by the 1938 amendment, but who had already qualified under the 1936 amendment, a savings clause was added to the 1938 amendment reading, "This amendment shall not affect cases of aliens who *prior to the date of its enactment* have established to the satisfaction of the Secretary of Labor, pursuant to an Act entitled 'An Act to amend the naturalization laws in respect of residence requirements, and for other purposes', approved June 25, 1936, * * * that absence from the United States was to be or had been for the purpose of carrying on activities described therein." [Emphasis supplied.] 8 U.S.C.A. § 382 note.

There are two reasons why this savings clause does not aid the appellant, as contended for by him. First, it specifically provides that the alien must have established the purpose of his absence prior to the enactment of the 1938 amendment [which was not done here], and, second, the establishment of that purpose must have been "pursuant to" the 1936 amendment. As we have shown above, the appellant failed to comply with the 1936 amendment at all, so far as his absence after June 25, 1937, was concerned.

Like the trial court, we regret that we are unable to follow the Zaoral case, Petition of Zaoral, D.C.N.D.Ill., E.D., 34 F. Supp. 930, cited by appellant, which seems to give support to the conclusions desired by him. The decision of the trial court is affirmed.

HANEY, Circuit Judge.

While I concur with the majority opinion, I think one question requires fuller treatment than has been given it by the majority.

In the amendment of June 25, 1936, it was provided that "no period of residence outside the United States shall break the continuity of residence if (1) prior to the beginning of *such period* (whether such period begins before or after his departure from the United States)" (italics supplied) the alien has established the purpose for his absence. The majority assumes, without discussion, that "such period" refers to "period of residence outside the United States". The language in parentheses, however, makes that assumption somewhat uncertain because the "period of residence outside the United States" could not begin "before * * * his departure from the United States". In the preceding part of the statute, not quoted above, which was amended on June 25, 1936, there are two other "periods" mentioned, but the parenthetical matter makes it as uncertain that either of such periods was intended as it does the "period of residence outside the United States". I think the latter period was intended by the use of the words "such period"; that the parenthetical matter leading to a contrary conclusion should be treated as surplusage; and that, therefore, the assumption made by the majority is correct.