## Petition of ROTHSCHILD.

District Court, S. D. New York.
April 25, 1944.

Joshua S. Koenigsberg, of New York City, for petitioner.

HULBERT, District Judge.

This contested petition for citizenship presents a knotty but interesting question of statutory construction.

Herman Rothschild, the petitioner, was born in Germany August 5, 1905, and entered the United States for permanent residence on February 26, 1936.

At that time the basic law for admission to citizenship required that it appear to the satisfaction of the court admitting any alien to citizenship that immediately preceding the date of his application he had resided continuously within the United States five years, at least. Act of July 29, 1906, C. 3592, 34 Stat. 596, Section 4, subdivision 4, 8 U.S.C.A. § 382.

Under that Act all questions as to whether or not an absence from the United States constituted a break in the continuity of the alien's residence were left to the determination of the court at the time of the hearing. Decisions varied from the strictest rigidity to the greatest liberality, depending upon the particular facts in each case.

In United States v. Dick, D.C., 291 F. 420, the petitioner, a native of Scotland, came to the United States at the age of 16 with his parents and went directly to Schenectady, New York, where the family took up its residence and the petitioner almost immediately entered the employ of the American Locomotive Company on the 13th day of October, 1903, and remained continuously in its employ except for a period of two years when he was a student at Union

College. In July 1913 he was sent by the Company to the office of its sales agents in Santiago, Chile. He was later transferred to Buenos Aires, and thereafter to Rio De Janerio, where he was in charge of a subsidiary of the American Locomotive Company at the time of the final hearing on his application for citizenship. His duties while so employed necessitated frequent trips to other parts of South America, as well as trips to Europe and the United States; during all of that time the family home was in Schenectady and while he was absent therefrom in the service of his employer, he contributed more than one-half of the expenses of maintaining it; he never married or purchased a residence in any foreign country, but returned to his home in Schenectady as often as business affairs would permit. On the 5th day of November, 1921, he filed in the Supreme Court of the State of New York, County of Schenectady, a petition to be admitted as a citizen of the United States, and after a hearing in open court, the objections of the examiner that the respondent was not entitled to citizenship having been duly considered and overruled, he was admitted and a certificate of naturalization in due form was issued to him. Thereupon the Government brought a proceeding to cancel the certificate of citizenship contending that Dick had not continuously resided in the United States for five years immediately preceding his petition as required by the naturalization statute. In a well considered opinion, the petition was denied.

This, and other cases, seem to have brought about the first legislative recognition of the "absence from the country" exception.

The Act of June 29, 1906, C. 3592, 34 Stat. page 596, reads:

"Sec. 4. That an alien may be admitted to become a citizen of the United States in the following manner and not otherwise:

"First. * * *

"Second. * * *

"Third. * * *

"Fourth. It shall be made to appear to the satisfaction of the court admitting any alien to citizenship that immediately preceding the date of his application he has resided continuously within the United States five years at least, * * * and that during that time he has behaved as a man of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same. In addition to the oath of the applicant, the testimony of at least two witnesses, citizens of the United States, as to the facts of residence, moral character, and attachment to the principles of the Constitution shall be required, and the name, place of residence, and occupation of each witness shall be set forth in the record." 34 Stat. at page 598.

The Act of March 2, 1929, C. 536, 45 Stat. 1512, provides:

"Sec. 6(b) The fourth subdivision of section 4 of such Act of June 29, 1906, as amended, is amended to read as follows:

" 'Fourth. No alien shall be admitted to citizenship unless (1) immediately preceding the date of his petition the alien has resided continuously within the United States for at least five years and within the county where the petitioner resided at the time of filing his petition for at least six months, (2) he has resided continuously within the United States from the date of his petition up to the time of his admission to citizenship, and (3) during all the periods referred to in this subdivision he has behaved as a person of good moral character, attached to the principles of the Constitution of the United States * * *. At the hearing of the petition, residence in the county where the petitioner resides at the time of filing his petition, and the other qualifications required by this subdivision during such residence, shall be proved by the oral testimony of at least two credible witnesses, citizens of the United States, in addition to the affidavits required by this Act to be included in the petition. If the petitioner has resided in two or more places in such county and for this reason two witnesses can not be procured to testify as to all such residence, it may be proved by the oral testimony of two such witnesses for each such place of residence, in addition to the affidavits required by this Act to be included in the petition. At the hearing, residence within the United States but outside the county, and the other qualifications required by this subdivision during such residence shall be proved either by depositions made before a naturalization examiner or by the oral testimony of at least two such witnesses for each place of residence.

" 'If an individual returns to the country of his allegiance and remains therein for a continuous period of more than six months and less than one year during the period immediately preceding the date of filing the

816

petition for citizenship for which continuous residence is required as a condition precedent to admission to citizenship, the continuity of such residence shall be presumed to be broken, but such presumption may be overcome by the presentation of satisfactory evidence that such individual had a reasonable cause for not returning to the United States prior to the expiration of such six months. Absence from the United States for a continuous period of one year or more during the period immediately preceding the date of filing the petition for citizenship for which continuous residence is required as a condition precedent to admission to citizenship shall break the continuity of such residence.' "

By an Act of June 25, 1936, C. 811, 49 Stat. 1925, the second paragraph of the fourth subdivision of Section 4, as amended, was further amended by striking out the period at the end of the paragraph concluding with the word "residence" and inserting a comma, and adding thereto:

" 'except that in the case of an alien declarant for citizenship employed by or under contract with the Government of the United States or an American institution of research recognized as such by the Secretary of Labor, or employed by an American firm or corporation engaged in whole or in part in the development of foreign trade and commerce of the United States or a subsidiary thereof, no period of residence outside the United States shall break the continuity of residence if (1) prior to the beginning of such period (whether such period begins before or after his departure from the United States) *the alien has established to the satisfaction of the Secretary of Labor* that his absence from the United States *for such period is to be* on behalf of such Government, or for the purpose of carrying on scientific research on behalf of such institution, or *to be* engaged in the development of such foreign trade and commerce or whose residence abroad is necessary to the protection of the property rights in such countries of such firm or corporation, and (2) such alien proves to the satisfaction of the court that his absence from the United States *for such period has been* for such purpose.'

"Sec. 2. No period of residence outside the United States during the five years immediately preceding the enactment of this Act shall be held to have broken the continuity of residence required by the naturalization laws if the alien proves to the satisfaction of the Secretary of Labor and the court that during all such period of absence he has been under employment by, or contract with, the United States, or such American institution of research, or American firm or corporation, described in section 1 hereof, and has been carrying on the activities described in this Act on their behalf." (Italics mine.)

By Joint Resolution of the Congress approved June 29, 1938, 52 Stat. 1247, 8 U.S.C.A. § 382, the second paragraph of the fourth subdivision of Section 4 of the Naturalization Act of June 29, 1906, as amended by Section 1 of the Act of June 25, 1936, was further amended to read, in part, as follows:

"(1) Prior to the beginning of such *absence,* or prior to the beginning of such employment, contract, or representation on behalf of an American institution of research or an American firm or corporation as aforesaid, such alien has established to the satisfaction of the Secretary of Labor that his absence for such period is to be on behalf of such government or for the purpose of carrying on scientific research on behalf of such institution, or to be engaged solely or principally in the development of such foreign trade and commerce, or whose residence abroad is necessary to the protection of the property rights abroad of such firm or corporation; and

"(2) Such alien proves to the satisfaction of the court that his absence from the United States for such period has been for such purpose.

"An alien who has been lawfully admitted into the United States for permanent residence, and who is the wife or husband of a citizen of the United States so engaged abroad within one of the above-mentioned categories, shall be considered as residing in the United States for the purpose of naturalization notwithstanding any absence from the United States.

"This amendment shall not affect cases of aliens who prior to the date of its enactment have established to the satisfaction of the Secretary of Labor, pursuant to an Act entitled 'An Act to amend the naturalization laws in respect of residence requirements, and for other purposes', approved June 25, 1936, that absence from the United States was to be or had been for the purpose of carrying on activities described therein."

The Nationality Act of 1940, approved October 14, 1940, C. 876, 54 Stat. 1137, 8

U.S.C.A. § 501 et seq. repealed the Act of June 29, 1906, C. 3592, except certain sections thereof not here material; also the Act of June 25, 1936, C. 801, and the Joint Resolution of June 29, 1938, but Section 347(a) 8 U.S.C.A. § 747(a), provided:

"Nothing contained in either chapter III or in chapter V of this Act, unless otherwise provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization or of citizenship, or other document or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any act, thing, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, acts, things, or matters, the statutes or parts of statutes repealed by this Act, are hereby continued in force and effect."

On June 11, 1936, 105 days after he had been admitted to the United States for permanent residence, the petitioner filed his declaration of intention, and sixteen days later made application to the Commissioner of Immigration and Naturalization, in accordance with the provisions of 8 U.S.C.A. § 210,[1] for a re-entry permit stating that he desired to leave the country in furtherance of the business of his employer.

Two weeks later, on June 30, 1936, he sailed for England. Before such departure he made no effort to establish to the satisfaction of the Secretary of Labor that his absence from the United States for such period was *to be* engaged in the development of such foreign trade and commerce, or that his residence abroad was necessary to the protection of the property rights in such country of such American corporation by which he was employed.

In Schwartz v. United States, 9 Cir., 121 F.2d 225, 226, petitioner, a native of the one time independent nation of Austria or Austria-Hungary, immigrated to the United States and thereafter petitioned for citizenship. The application was denied. He appealed. The record discloses that two years and three months after he entered the United States for permanent residence, he departed for England in employment by an American corporation engaged in foreign trade and commerce. He returned to the United States one year and eight months later, and applied on June 12, 1939 to the Secretary of Labor for a finding that he had been abroad on foreign commerce, etc. The Act of June 29, 1906, as amended by the Act of March 2, 1929 was the law at the time of his departure. The court said:

"Only his return to the United States within a year from the date of his departure (January 15, 1936) would have avoided a conclusive presumption that a fatal break in the continuity of his residence had occurred."

If the same statutory provisions were in effect when the petitioner herein departed from this country, the court would feel constrained to follow the determination in Schwartz v. United States, supra. The statutory provision under which the petitioner here seeks relief had become a law by Presidential approval five days before petitioner's departure, but the usual advice from the Office of the Chief Executive to the Congress that the Bill had been signed, was not received by the Legislative bodies of the Congress until June 30, 1936. (See Congressional Record Vol. 80 Part 10 page 10895). That was only a few hours before the vessel, upon which the petitioner took passage, sailed out of New York Harbor. It is his contention that he did not know at that time of the enactment of the Act of June 25, 1936, and, while it is generally assumed that "ignorance of the law is no excuse" there is authority to support his position (The Cotton Planter, Fed.Cas.No. 3,270), if it were necessary to do so.

The Nationality Act of 1940, § 327(d), 8 U.S.C.A. § 727(d), provides:

"The Commissioner shall prescribe and furnish such forms as may be required to give effect to the provisions of this subchapter, and only such forms as may be so provided shall be legal. All certificates of naturalization and of citizenship shall be

---

1 "Sec. 210. Reentry permits. (a) Persons entitled to; application; form and contents; verification; photograph accompanying. Any alien about to depart temporarily from the United States may make application to the Commissioner of Immigration and Naturalization for a permit to reenter the United States, stating the length of his intended absence, and the reasons therefor. Such application shall be made under oath, and shall be in such form and contain such information as may be by regulations prescribed, and shall be accompanied by two copies of the applicant's photograph."

printed on safety paper and shall be consecutively numbered in separate series."

■ But the court can, and will, take judicial notice that for the purpose of carrying out statutes of the character of the Act of June 25, 1936, the Secretary of Labor usually, and in this case did, prepare and have printed forms considered requisite upon which aliens admitted to this country for permanent residence and desiring to leave the country, might make application in an attempted compliance with the provisions of the Act. But these forms were not available for distribution until about July 27, 1936. (See Federal Register of that date, page 1035.) Presumably the petitioner was then in England. He had sailed without waiting for the reentry permit which, in due course, was forwarded to him through the American Consulate in London. Of course, the reentry permit relates to Immigration, whereas the Act of June 25, 1936 pertains to citizenship. But, certainly the application for the reentry permit indicated a disposition upon the part of the petitioner to comply with the legal requirements to the extent that he was aware of them, and physically able to do so.

It may be presumed that when the reentry permit was issued by the Commissioner with the approval of the Secretary of Labor and forwarded through the American Consulate in London to the petitioner, the Department was aware of his departure and its purpose, but it does not appear that the blank forms available for distribution on July 27, 1936, were likewise forwarded to him through the American Consulate in London, or in any other manner, or that any advice was communicated to him by the Department of Labor indicating the necessity for a compliance on his part with the statute in question.

In respect of the absence for more than a year, the facts in this case distinguish it from Schwartz v. United States, supra.

The petitioner returned to the United States on July 5, 1937, after an absence of one year and five days. He might then have applied to the Secretary of Labor for a finding that he had been abroad on foreign commerce, etc. He failed to do so. However, he did apply for and another reentry permit was issued to him on July 8, 1937. On the face of the reentry permit (on the reverse side) is printed the substance of the Act of June 25, 1936, with the following admonition:

"If you have filed a declaration of intention and you are going abroad: * * * (3) For the purpose of engaging in the development of foreign trade and commerce of the United States as an employee of an American firm or corporation or subsidiary thereof engaged in whole or in part in the development of such trade or commerce; or (4) For the purpose of protecting the property rights of such firm or corporation in any foreign country or countries; your absence from the United States may not break the continuity of your residence for naturalization purposes, even though such absence may be in excess of 1 year. If you are going abroad for the purpose indicated above, you should forward an application on Form 2363 'Application for the Benefits of the Act of June 25, 1936 (Public, No. 805-74th Congress)' "

The petitioner again departed from New York on July 14, 1937, having been in the United States only nine days, and did not again return until January 2, 1939, after an absence of one year, five months and nineteen days. Without having made application to the Secretary of Labor for a finding that he had been abroad on foreign commerce, etc., another reentry permit was issued to him on January 20, 1939. He departed meanwhile, and for the third time on January 7, 1939, after having been in the United States for five days, and did not return until July 8, 1940, after an absence of one year and six months.

Thus, from the time he first entered the country for permanent residence until his final return he had only spent a total of 138 days in the United States.

It would, therefore, appear that he had resided so short a time in the United States that he could hardly have sufficiently familiarized himself with our institutions and mode of government. See United States v. Mulvey, 2 Cir., 232 F. 513. Nevertheless, he still had approximately three months before the Nationality Act became effective to apply to the Department of Justice (the Bureau of Immigration and Naturalization had meanwhile been transferred to the Department of Justice) (Title 5 U.S.C.A. Sec. 133(t), Reorganization Plan No. 3, Sec. 6, effective June 30, 1940, by Sec. 133(u); 5 Fed. Register 2107, 54 Stat. 1231), for the benefit of the Act of June 25, 1936, as amended by the Joint Resolution of June 29, 1938, but he did not so apply until June 10, 1941 to "cover said absence from the United States while em-

ployed as a representative of Robert Joseph, Inc., an American corporation." The application was denied on July 15, 1941.

When the petition for citizenship came on for final hearing, July 23, 1942, the Immigration and Naturalization Service filed a formal objection to the granting of the petition upon the ground that the petitioner had failed to establish continuous residence within the United States during the period of five years next preceding the filing of said petition.

The petitioner contends that he is entitled to the benefits of the Act of June 25, 1936, and that his absence from the United States in excess of one year did not break the continuity of residence for naturalization purposes.

Petitioner's counsel challenges the ambiguities of the Act of June 25, 1936, and relies upon the Schwartz case, particularly the dissenting opinion of Haney, Circuit Judge who said at page 229 of 121 F.2d:

"In the preceding part of the statute, not quoted above, which was amended on June 25, 1936, there are two other 'periods' mentioned, but the parenthetical matter makes it as uncertain that either of such periods was intended as it does the 'period of residence outside the United States.' I think the latter period was intended by the use of the words 'such period'; that the parenthetical matter leading to a contrary conclusion should be treated as surplusage; and that, therefore, the assumption made by the majority is correct."

The petitioner contends:

1. "there cannot be any 'period of residence outside the United States' after departure from the United States, and at the same time requiring an alien to establish to the satisfaction of the Attorney General 'prior to the beginning of such period',— not period of employment but period of residence outside the United States. In other words, the statute says that the alien may be out of the United States when the period of residence outside the United States began after a departure from the United States. This contemplates a case where the alien had already left the United States. Nevertheless, the Service decided 'that he has failed to comply with the mandatory requirements of the statute that an alien establish to the satisfaction of the Attorney General, *prior to the beginning of his employment abroad.*"

However, the amendment of June 29, 1938, eliminated the parenthetical clause in Section 1 which Judge Haney considered surplusage and substituted the word "absence" for the word "period" and otherwise modified the language of the statute for clarification.

It seems clear:

■ (a) That Section 1 of the Act of June 25, 1936 relates to an absence after that date, or employment during the absence after that date by an American corporation, because it is conceivable that an alien who entered for permanent residence, may leave the country, having first obtained a reentry permit, to maintain his status, and after he has arrived abroad be employed by and enter into the service of an American corporation engaged in the promotion of foreign trade and commerce. Before he left the country, any time after June 25, 1936 in such employment, or after he had left the country subsequent to such date and had entered into such employment abroad, it was necessary for him to establish to the satisfaction of the Secretary of Labor "that his absence from the United States for such period is *to be* engaged solely or principally in the development of such foreign trade and commerce, or whose residence abroad is necessary to the protection of the property rights abroad of such firm or corporation" and thereafter to establish to the satisfaction of the court, that his absence for such period *has been for such purpose,* and under Section 2 that "such alien proves to the satisfaction of the court that his absence from the United States for such period *has been* for such purpose," and further provides:

"* * * This amendment shall not affect cases of aliens who prior to the date of its enactment have established to the satisfaction of the Secretary of Labor, pursuant to an Act entitled 'An Act to amend the naturalization laws in respect of residence requirements, and for other purposes', approved June 25, 1936, that absence from the United States was to be or had been for the purpose of carrying on activities described therein."

The petitioner relies on Petition of Zaoral, D.C., 34 F.Supp. 930.

The facts in that case are stated in great detail in a very erudite opinion by Judge Igoe who concludes, page 936 of 34 F. Supp.:

"2. The return to the United States in July, 1936, at which time the petitioner remained in the United States on the employer's business until August 1, 1936, did not break the continuity of his residence (abroad) within the meaning of the Act as amended in 1936, for the reason that he was during all such time actually in the services of his employer and his filing of a Petition for Naturalization at that time would have been unavailing and useless.

"3. Section 2 of the Act of June 25, 1936, is in full force and effect and was not repealed or modified by the joint resolution of Congress passed in 1938.

"4. A proper construction of Section 1 of the Act of June 25, 1936, should not require application for the benefits of the Act prior to the beginning of a period of residence abroad in the case of aliens who were, in fact, residing abroad at the time of the passage of the Act and were engaged in the activities enumerated in the Act. The Act of June 25, 1936, was remedial legislation and designed to aid persons who were engaged in promoting the interests of the United States in foreign countries and should be given a liberal construction which would accomplish its purpose. Under such a construction an alien who had been continuously employed in the services of an American owned[2] corporation in its foreign trade might at any time upon his return to the United States after June 25, 1936, present his application and be given the benefits of the Act of 1936 as a resident in a foreign country while in the employ of an American owned[2] corporation.

"5. The Act of June 25, 1936, properly construed, would enable persons belonging to the classes intended to be aided to claim the benefits of the Act at any time prior to filing a petition, and such aliens may make such application for the benefits of the 1936 Act even after the passage of the 1938 Act, and the establishment of the facts concerning their employment to the satisfaction of the Secretary of Labor at any time prior to the filing of a Petition for Naturalization will constitute an establishment 'pursuant to' the 1936 Act.

"6. Section 2 of the Act of June 25, 1936, which provides * * * was intended to give the Act a retroactive effect and was not in any way intended as a limi-

tation on the submission of an application at a later date or for a longer period of residence."

The essential factor in the Zaoral case is that the original application to the Secretary of Labor for a finding that his employment by an American corporation in its foreign business entitled him to the benefits of the Act of June 25, 1936, as a consequence of which his residence abroad might properly be construed as residence in the United States for naturalization purposes, was made on August 12, 1938, and denied September 21, 1938, "apparently because the 1936 Act had been considered by the Department of Labor as partially repealed by the Act of June 29, 1938"; upon a requested reconsideration the Department rendered a decision on December 15, 1938, recommending that the application be not approved, but at a later date, about February 15, 1939, the Secretary of Labor made the finding that "she was satisfied with the facts in the Charles T. Zaoral case that the alien's employment abroad came within the terms of the Act of June 25, 1936 but the court should be asked to rule on all questions presented by the case" which the court did on March 13, 1939, all before the enactment of the Nationality Act of 1940.

Petitioner's counsel has called my attention to two cases recently disposed of in this court (unreported).

(1) Arnold Martin Bernstein (Clerk's file 2270/D–349583) applied on October 16, 1939, for the benefits of the fourth subdivision of Section 4 of the Act of June 29, 1938, as amended.

He was born in Germany and was lawfully admitted for permanent residence at New York, N. Y., October 31, 1933. He filed a declaration of intention in this court on November 21, 1933, to become a citizen. Applying the principles of the Zaoral case, the Department concluded that the alien declarant "was employed by an American corporation (of which he was the President but it does not appear whether the stock was American owned) engaged in whole or in part in foreign trade and commerce of the United States and that his absence from the United States from Nov. 30, 1935 to Oct. 7, 1936; and from Dec. 9, 1936 to Sept. 1, 1939 was *to be* engaged in the de-

---

[2] There is nothing in the statute about an American *owned* corporation. Perhaps there should be. Otherwise there is nothing to prevent an alien from organizing his own corporation and being employed by it, or securing employment by an American corporation, the certificates of whose stock, or a majority thereof, is owned by aliens.

velopment of said foreign trade and commerce and his residence abroad was necessary to the protection of the property rights abroad of such corporation."

No opinion was expressed by the Department as to whether the alien had filed an application and moved to claim the benefits of the Act of June 25, 1936, within the time limit required by that Act, determination of that question being left to the court which admitted Bernstein to citizenship on the 9th day of July, 1940, upon the authority of the Zaoral case.

Incidentally, in this case, it appears, according to the application for the benefits of the Act of June 25, 1936, that from the date that Bernstein was admitted for permanent residence October 31, 1933, until the date of his application for the benefits of the Act, he had only been in this country 185 days out of a total period of 6 years.

(2) Richard Rueda (Clerk's file 2270D/-353742) was lawfully admitted to the United States for permanent residence on September 14, 1930; made declaration of intention in this court on May 9, 1934, and received a reentry permit on January 10, 1935, which was extended on five occasions to and including June 10, 1938, and indicates return of petitioner to the United States on July 4, 1938. Another reentry permit was then issued July 11, 1938, and indicates his return to the United States March 20, 1939. On April 3, 1939, he made application to the Department for the benefits of the Act of June 25, 1936, as amended, alleging that he was employed as an Engineer by Compania Riero, Toro & Van Twistern, S. A. Havana, Cuba. It does not appear that his employer was an American corporation. However he alleged in his application for the benefits of said Act, that his employment necessitated his residence in Cuba from January 18, 1935, to March 19, 1939, and that his absence from the United States during that period was for the purpose of developing foreign trade and commerce on behalf of an American corporation, or a subsidiary thereof, engaged in whole or in part in the development of such trade and commerce.

The Chairman of the Board of Review (Immigration & Naturalization Service, Department of Justice) considered the petitioner was, apparently, eligible to the benefit of the Act of June 25, 1936, with respect to his absence from the United States prior

to that time, but felt there was some doubt as to his eligibility to the benefits of such Act to cover his absence from the United States subsequent to June 25, 1936, in view of the 1938 amendment. The Board made a recommendation that the Secretary of Labor find "that she is satisfied of the facts concerning applicant's employment but expresses no opinion as to whether applicant has moved to claim the benefits of the 1936 Act within the time limit required by that Act leaving to the court which hears the petition for naturalization the determination of the question" but calls the attention of the court to the Zaoral case.

Apparently upon that authority, the petitioner was admitted to citizenship on the 9th day of July, 1940.

Upon a careful review of the facts in the case at bar and in the light of the repeal of the Act of June 25, 1936, and the Joint Resolution of June 29, 1938, and a careful consideration of section 347(a) of the Nationality Act of (October 14) 1940, this court is of the opinion that the petitioner had no status which comes within the provision of that saving clause, and the petition must, therefore, be denied.