Petition for Naturalization of
Daniel Henry PINNER.

No. 130289.

United States District Court
N. D. California, S. D.

March 12, 1958.

Arlin W. Hargreaves, Robert S. Bixby, Fallon & Hargreaves, San Francisco, Cal., for petitioner.

Daniel H. Lyons, San Francisco, Cal., Designated Naturalization Examiner Immigration and Naturalization Service.

GOODMAN, Chief Judge.

The issue in this naturalization proceeding is whether petitioner has met the statutory residential requirements for admission to citizenship. A brief chronology of the relevant statutes will facilitate consideration of this question.

Since the first naturalization statute was enacted in 1790, 1 Stat. 103, a period of residence in the United States has been required of applicants for naturalization. Since 1802, 2 Stat. 153, the required period of residence has been five years. The Act of March 3, 1813, 2 Stat. 809, required the five-year period of residence to be a continuous period immediately preceding naturalization, and provided that the applicant for naturalization must not have been outside the United States during this period. Upon the enactment of the Revised Statutes in 1874, the requirement of continuous physical presence in the United States during the five-year period of residence was eliminated. Revised Statutes § 2170. For many years thereafter the naturalization statutes did not specify whether an absence from the United States would break the required period of five-years' continuous residence. In 1929, the Congress provided that an absence of one year or more during the five-year period would break the continuity of residence, 45 Stat. 1513.

Subsequently, the Congress determined that some relief from this provision was warranted for aliens whose duties as employees of the United States required them to remain abroad for periods in excess of one year.[1] By the Act of June 25, 1936, 49 Stat. 1925, the Congress provided that if an alien had been admitted to the United States and had declared his intention to become a citizen, no period of residence outside the United States should break his period of residence within the United States if prior to the beginning of his residence abroad he established to the satisfaction of the Secretary of Labor that his absence from the United

[1]. See House Report 516, Senate Report 2159, 74th Congress.

States was to be as an employee of the United States.[2] Experience proved that undue advantage was taken of this remedial provision by aliens who had never been to the United States but were employed abroad by the United States. Many such aliens, having no intention to reside in the United States but desirous of becoming citizens, took leave from their employment, came to the United States, declared their intention to become citizens, applied to the Secretary of Labor for the benefits of the statute, and returned to their employment abroad.[3] To put an end to this practice, the Congress in 1938 amended the statute, 52 Stat. 1247, to limit its benefits to aliens who had resided in the United States at least one year and who thereafter applied to the Secretary of Labor for preservation of their United States residence and obtained his approval prior to the beginning of their employment for foreign duty or prior to the beginning of their absence abroad.

In 1940 when all the naturalization laws were revised and reenacted as the Immigration and Nationality Act of 1940, 54 Stat. 1137, the provision by which aliens employed abroad by the United States might preserve their United States residence during an absence of more than a year, was retained substantially as it was after the 1938 amendment except that the alternative times for securing approval of the alien's application for preservation of United States residence were eliminated, and such approval was required to be secured prior to the alien's absence abroad. As well, the Attorney General was substituted for the Secretary of Labor as the officer from whom such approval should be obtained.

In 1952 the naturalization laws were again revised and reenacted as the Immigration and Nationality Act of 1952, 66 Stat. 166, 8 U.S.C.A. § 1101 et seq. The 1952 Act added a new requirement that applicants for naturalization must have been physically present within the United States for at least one-half of the required five-year period of continuous residence. It waived this requirement for alien employees of the United States who qualified for preservation of their United States residence during absences of more than a year. But, it added a new qualification for such aliens. In addition to the former requirement that such aliens must have resided in the United States for one year, it required that they must have been continuously physically present in the United States for the one-year period. As well, the 1952 Act again changed the requirement in respect to the time when such aliens should obtain the approval of their application for preservation of United States residence from the Attorney General. It provided that the Attorney General's approval should be obtained both prior to the beginning of the alien's employment by the United States for foreign duty and prior to the expiration of one year of continuous absence from the United States. The 1952 Act also contained a savings clause providing that the Act, except where it specifically provided otherwise, should not affect any status existing at its effective date, and that as to such status the prior law should govern.

Petitioner contends that he has met the residential requirements of the Immigration and Nationality Act of 1952, the prevailing law. Or, that in the alternative, if he has not, he has satisfied the residential requirements of the Immigration and Nationality Act of 1940 and had a status existing on the effective date of the 1952 Act which, by reason of the savings clause in that Act, entitles him to naturalization in accordance with the 1940 requirements.

The facts relied upon by petitioner are undisputed. Petitioner is a native of England. In March, 1946 he was recruited in London by the United States Air Force for employment in Wiesbaden,

---

2. The benefits of this provision were also accorded to aliens employed abroad by American institutions of research or by American firms engaged in the development of foreign trade.

3. See House Report 2659, 75th Congress.

Germany. He worked for the Air Force in Wiesbaden until May, 1952 when he resigned in order to come to the United States. He was admitted to the United States for permanent residence on May 13, 1952. He spent several weeks visiting a friend at Langley Air Force Base, Newport News, Virginia, and then embarked on a cross-country tour of the United States.

In the course of this tour, he made a side trip of five days to Toronto, Canada. He arrived in San Francisco in July 1952 and obtained employment with a travel bureau where he worked until the end of April, 1953. He then decided, as a consequence of the recent death of his mother in England, to return there for a visit with his sister. En route to England he made a ten-day trip through Canada and sailed from New York City on May 14, 1953. He visited in England for three weeks and then went to Weisbaden, Germany where he hoped to find employment again with the United States Air Force. The hoped-for employment did not materialize for some time, and he was not hired by the Air Force until October, 1953. On January 11, 1954 he filed an application, as an alien employed abroad by the United States, to preserve his United States residence for naturalization purposes. This application was approved by the Attorney General.

Petitioner's employment by the Air Force terminated in May, 1957, and he returned to San Francisco where he is now living. He filed his petition for naturalization in this Court on June 7, 1957.

■■ Since petitioner was not physically present in the United States for one-half of the required five-year period of residence immediately preceding his petition for naturalization and was absent from the United States during this time for a continuous period in excess of one year, he does not meet the residential requirement of the 1952 Act unless he qualified under the 1952 Act for preservation of his United States residence while abroad as an employee of the United States. Although petitioner's application for preservation of his United States residence was approved, it is evident that he failed in two respects to meet the requirements of the 1952 Act for preservation of his United States residence. Because of his two trips into Canada, he had not been continuously physically present in the United States for a period of one year.[4] He did not secure approval of his application for preservation of residence prior to the time he entered upon his employment abroad by the United States as the 1952 Act specifically required.[5]

Petitioner urges that the 1952 Act does not in fact require applicants for preservation of United States residence while abroad to have been continuously physically present in the United States for one year. But, when the language of the 1952 Act is considered in relation to the prior law, there is not the slightest doubt that it does make such requirement. Petitioner's argument does not merit any extended discussion. Particularly not, in view of the fact that he also failed to qualify under the 1952 Act for preservation of his United States

4. In this application petitioner failed to list his two trips into Canada. Consequently his application did not reveal that he had not been continuously physically present in the United States for a year.

5. The administrative regulations orginally promulgated under the 1952 Act and in effect when petitioner's application was filed, followed the statute and required applications for preservation of United States residence to be filed be-

fore the applicant had been absent from the United States for a continuous period of one year, and prior to his employment abroad. 17 F.R. 11540, December 19, 1952 8 C.F.R. (1952 Ed.) § 316a.21. This regulation was amended on August 13, 1954 to provide that the application might be filed either before or after the applicant's employment commenced. 19 F.R. 5103; 8 C.F.R. (1957 Supp.) § 316a.21. Since this amendment is contrary to the plain language of the statute it has no validity.

residence because timely approval of his application was not secured.

█ A more difficult question is posed by petitioner's contention that he has satisfied the residential requirements of the Immigration and Nationality Act of 1940, and that on the effective date of the 1952 Act he had a status which, by virtue of the savings clause of the 1952 Act, entitles him to be naturalized in accordance with the requirements of the 1940 Act.

The only status under the naturalization laws which petitioner had on the effective date of the 1952 Act, December 24, 1952, was that of an alien admitted to the United States for permanent residence. The question is whether this is a sufficient status to call into play the savings clause of the 1952 Act.

Admission to the United States for permanent residence is the first and most fundamental step in the naturalization process. Yet it is not a step which, in itself, indicates any desire or intention on the part of an alien to become a United States citizen. Without further initiative on the part of the alien, he retains this status indefinitely but the naturalization process proceeds no further. Thus if the status of an alien admitted for permanent residence is to be recognized under the savings clause of the 1952 Act, it may be invoked many years hence to procure naturalization pursuant to the requirements of the Immigration and Nationality Act of 1940. Unforeseen difficulties could result from a continued resort to superceded requirements.

Yet the savings clause of the 1952 Act is sweeping in its terms[6] and has been liberally construed. In United States v. Menasche, 1955, 348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615, the Supreme Court held that an alien by filing a declaration of intention to become a citizen pursuant to the Immigration and Nationality Act of 1940 acquired a status, preserved by the savings clause of the 1952 Act, which entitled him to have his eligibility for citizenship determined by the requirements of the 1940 Act. In a strong dictum in that case, the Supreme Court also indicated that had the alien not filed a declaration of intention, his admission for permanent residence while the 1940 Act was in effect would have sufficed to give him a status under the 1940 Act preserved by the 1952 savings clause.

In reliance on this dictum, the Court of Appeals for this circuit in Aure v. United States, 9 Cir., 1955, 225 F.2d 88, 90, held that an alien who had become eligible for summary naturalization pursuant to the 1940 Act by virtue of three years' service in the United States Navy thereby acquired a status which by reason of the 1952 savings clause entitled him to naturalization pursuant to the 1940 Act after the effective date of the 1952 Act. The Court noted that the alien had not taken any affirmative action to become a citizen prior to the effective date of the 1952 Act and that his eligibility for citizenship under the 1940 Act would not have automatically ripened into full citizenship without affirmative action. But, the Court stated, "Clearly, it is the teaching of the Menasche case, and we are satisfied that

---

6. The savings clause, Section 405(a) of the 1952 Act (note to 8 U.S.C.A. § 1101), reads as follows: "Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act shall take effect; or to effect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes, conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect."

it was the intent of Congress, that the savings clause is not limited to cases involving affirmative action and those concerning derivative citizenship, but its preservation feature should be extended to all substantive rights existing at the time the statute creating the rights was repealed. The real test is whether the 'right' which the alien seeks to have preserved by the savings clause is a substantive right, and in this regard we are mindful of the distinction between substantive rights and procedural remedies."

Subsequently, in three decisions the United States District Court for the Southern District of New York has held that the mere admission of an alien to the United States for permanent residence prior to the effective date of the 1952 Act gives him a status under the prior law which by reason of the 1952 savings clause entitles him to have his eligibility for naturalization tested by the pre-1952 requirements. Petitions of F— G— and E— E— G—, D.C.1956, 137 F.Supp. 782; Petition of Pauschert, D.C.1956, 140 F.Supp. 485, and Petition of Kaufteil, D.C.1957, 152 F.Supp. 538.

The unanimity of this interpretation of the 1952 savings clause is more compelling than any doubts concerning its wisdom. It must be concluded that petitioner's admission to the United States for permanent residence prior to the effective date of the 1952 Act gave him a status entitling him to any naturalization rights accorded by the 1940 Act.

■ As has been noted the 1940 Act granted the right of preservation of United States residence while abroad to alien employees of the United States who had resided in the United States for one year after having been admitted for permanent residence, who had filed a declaration of intention, and who had secured the timely approval of the Attorney General. Although petitioner was admitted for permanent residence and resided here for at least one year thereafter, he never filed a declaration of intention to become a citizen.

Petitioner's failure to file a declaration of intention was a consequence of the abolition by the 1952 Act of the declaration of intention as a step in the naturalization process. Petitioner urges that the 1940 Act made the filing of a declaration of intention a prerequisite for an application for preservation of United States residence while abroad only because the declaration was then an essential step in the naturalization process. He contends that once the declaration of intention was abolished as a step in the naturalization process it could no longer be a prerequisite for an application for preservation of United States residence even though the application is otherwise to be tested by the pre-1952 requirements. This contention is supported by a decision to that effect by the United States District Court for the Southern District of New York in Petition of Kaufteil, 1957, 152 F.Supp. 538. It is my opinion that this view is correct and that the declaration of intention was merely a pre-1952 procedural requirement which, in the light of the distinction drawn by our Court of Appeals between substantive rights and matters of procedure, was not retained in effect by the savings clause of the 1952 Act.

■ There remains the question whether approval of petitioner's application for preservation of his United States residence was timely secured. It may be that the time prescribed by the 1940 Act for obtaining such approval should be regarded as a mere procedural requirement which was not retained in effect by the savings clause of the 1952 Act. If this were so, petitioner might be held to the 1952-time-requirement, just as he is permitted to advantage himself of the 1952 provision abolishing the declaration of intention. Certainly petitioner had ample opportunity to comply with the requirement of the 1952 Act that approval of applications for preservation of United States residence should be obtained both prior to the beginning of employment by the United States for foreign duty and prior to the expiration of one year of continuous absence from

the United States. Petitioner did not leave the United States or enter upon Government employment for many months after the effective date of the 1952 Act.

But, it is unnecessary to decide this question, because it appears that petitioner's application for preservation of United States residence was tardy not only under the 1952 Act but under the 1940 Act as well.

The relevant provisions of the 1940 Act are as follows:

"Absence from the United States for a continuous period of one year or more during the period for which continuous residence is required for admission to citizenship, immediately preceding the date of filing the petition for naturalization or during the period between the date of filing the petition and the date of final hearing, shall break the continuity of such residence, except that in the case of an alien who has resided in the United States for at least one year, during which period he has made a declaration of intention to become a citizen of the United States, and who thereafter is employed by or under contract with the Government of the United States * * * no period of absence from the United States shall break the continuity of residence if—

"Prior to the beginning of such period (whether such period begins before or after his departure from the United States) the alien has established to the satisfaction of the Attorney General that his absence from the United States for such period is to be on behalf of such Government." Section 707, now 8 U.S. C.A. § 1427.

It is not entirely clear what period described in the first paragraph of this provision is referred to as "such period" in paragraph two. If any attempt is made to give effect to the parenthetical phrase in paragraph two, none of the periods mentioned in paragraph one seems appropriate. But if the parenthetical phrase is treated as surplusage, which it must be if any sense is to be made of the statute, it seems most likely that "such period" was intended to refer to the period of absence from the United States.[7] If this interpretation is correct, the 1940 Act required aliens employed by the United States for foreign duty to obtain approval of their applications for preservation of their United States residence prior to the time they absented themselves from the United States. Petitioner did not even file his application until he had lived abroad for many months and had entered upon his foreign employment by the United States.

Petitioner argues that the statute should be interpreted to mean that approval of the application must be secured prior to the time that the alien has been absent from the United States for a year. He suggests that this interpretation would be more in accordance with the purpose of the statute to encourage aliens to make their special qualifications for foreign service available to the United States, since it would permit an alien to enter upon a foreign assignment without delaying his departure until his application was approved. While there is some merit to this argument, this interpretation would require more improvisation than the language of the statute permits.

Clues to the intent of Congress in the legislative history of the 1940 Act and the analogous prior statutes are meager. The 1936 statute required approval of applications for preservation of United States residence to be secured prior to the alien's "period of residence outside the United States." As has been noted, in 1938 the Congress determined that the benefits of the statute should be restricted, and amended the statute to require approval of an aliens application for preservation of United States resi-

7. See the similar interpretation of the analogous language in the 1936 statute in Schwartz v. United States, 9 Cir., 1941, 121 F.2d 225.

dence prior to the beginning of his absence from the United States or prior to the beginning of his employment for foreign duty. The 1940 Act states that the application must be approved prior to the beginning of the alien's "period of absence from the United States." If this language were interpreted to mean that approval of the application prior to the time the alien had been absent for one year would suffice, it would constitute a considerable relaxation of the prior requirements. There is no apparent justification for reading so much into the statute in the absence of any substantial indication that such was the Congressional intent.

It is significant that the administrative regulations promulgated pursuant to the 1940 Act, while reading more into the statute than is there, did not go so far as to adopt the construction urged by petitioner. The regulations, provided that the alien must have secured the approval of his application for preservation of his United States residence prior to the beginning of his absence from the United States or prior to the beginning of his employment by the United States if he was temporarily absent from the United States when the employment was obtained. 8 C.F.R. (1949 Ed.) § 354.3. Even under this interpretation, petitioner's application was not timely since he did not file it until after entering upon his employment by the Air Force.

Since it appears that petitioner's application for preservation of his United States residence was not timely filed and approved either under the 1940 or the 1952 Act, he has not met the residential requirements of the 1940 Act and his petition for naturalization must be denied.

It is appropriate to note that while the denial of petitioner's application for citizenship may seem to hinge upon a technical failure to comply with the letter of the statute, it nonetheless accords with the statute's basic philosophy.

It is evident that the special consideration given to aliens employed abroad by the United States is not intended as a reward for their government service. The purpose is to enable the United States to secure the services of specially qualified resident aliens whose desire to become United States citizens would make them unwilling to accept foreign employment which would delay their naturalization. The various requirements made of applicants for preservation of United States residence while abroad, while necessarily somewhat arbitrary in operation, were designed to restrict the statutory benefits to aliens whose first concern is the acquisitions of citizenship and to withhold them from aliens to whom they would represent merely a shortcut to naturalization.

Petitioner falls within the latter class. When he was first hired by the Air Force for employment in Germany, he had never been to the United States, and he has stated that the employment represented merely an opportunity to travel. When petitioner came to the United States he remained only the bare minimum time believed necessary to qualify him for preservation of United States residence. At the time of his naturalization examination, he indicated that, if he were granted citizenship, he planned to leave immediately for France to enter upon employment with the United States Air Force which apparently is now open only to citizens. It is not unfair to conclude that employment by the United States rather than United States citizenship, is petitioner's foremost desire. This is not said by way of criticism, for it appears that petitioner has been regarded by the Air Force as a valued employee. It is said to point out that the denial of petitioner's application for naturalization at this time is warranted by more than a mere technicality.

It is ordered that the petition of Daniel Henry Pinner for naturalization be and is hereby denied.