## MATTER OF GRAVES

### In Section 316(b) Proceedings

### A-23443197

*Decided by Commissioner November 13, 1985*

(1) It is not possible to construe the uninterrupted physical presence requirement of section 316(b) of the Act, 8 U.S.C. § 1427(b) (1982), to allow departures from the United States. *INS* v. *Phinpathya*, 464 U.S. 183 (1984), followed; INTERP. 316.1(c)(3) overruled.

(2) The effect of *Rosenberg* v. *Fleuti*, 374 U.S. 449 (1963), cannot be extended to statutory schemes which include a requirement of uninterrupted or continuous physical presence.

(3) An applicant's failure to establish that he or she has been present in the United States for an uninterrupted period of 1 year after lawful admission for permanent resident bars eligibility for preservation under section 316(b).

(4) Any departure from the United States for any reason or period of time bars a determination that an alien has been continuously physically present in the United States or present in the United States for an uninterrupted period during the period including the departure.

ON BEHALF OF PETITIONER:   Lydia Tugendrajch, Esquire
233 Broadway, Suite 760
New York, New York 10279

DISCUSSION: This matter comes forward on appeal from denial by the acting district director, Hartford. The appeal will be dismissed.

### I. FACTS

The applicant is a native and citizen of the United Kingdom who was admitted to the United States for permanent residence on May 12, 1982. He is an employee of ITT Rayonier, Inc., a wholly owned subsidiary of ITT Corporation. His employer desires to transfer him to its London office in the capacity of senior sales representative. The applicant seeks to preserve residence for naturalization purposes under section 316(b) of the Immigration and Nationality Act, 8 U.S.C. § 1427(b) (1982). His application for that benefit was denied by the acting district director, Hartford, Connecticut, based on a

determination that the applicant had not been physically present and residing in the United States for an uninterrupted period of at least 1-year subsequent to his admission for permanent residence.

Under the aegis of his employment by ITT, the applicant, in the period from May 12, 1982, to March 23, 1984, was absent from the United States for an aggregate of 108 days in that 680-day period. The 108-day aggregate absence was caused by a total of 15 business trips ranging from 1 to 16 days. Examination of any particular 1-year period within the overall period would result in a roughly proportionate amount of international travel.

## II. *THE APPLICANT'S ARGUMENT*

The applicant argues on appeal that the acting district director failed to assess the significance of his departures under the doctrine enunciated in *Rosenberg v. Fleuti*, 374 U.S. 449 (1963), regarding exclusion proceedings under section 212 of the Act, 8 U.S.C. § 1182 (1982), whereby certain departures from the United States may be regarded as sufficiently insignificant as not to have occurred for purposes of law. The applicant argues that such an analysis is properly utilized in determining eligibility for preservation of residence under section 316(b). We disagree.

## III. *THE LEGISLATIVE HISTORY OF SECTION 316(b) REQUIRES A STRICT INTERPRETATION OF THE PHYSICAL PRESENCE REQUIREMENT*

Although the published legislative history of this provision does not offer any specific information touching on this issue, the evolution of section 316(b) and its predecessors indicates quite clearly a steady tightening of the residence requirement. The Act of March 2, 1929, 45 Stat. 1512 (repealed 1940), provided that absences from the United States for periods of 1 year would break the continuity of residence for purposes of naturalization.

Subsequently, however, Congress determined that some relief was warranted for aliens whose duties as employees of the United States required them to remain in foreign countries for extended periods of time. Congress consequently amended the residence requirements to allow permanent residents who had declared an intention to become United States citizens to reside abroad without breaking the 5-year residence required for naturalization. To qualify, such persons had to satisfy the Secretary of Labor, prior to leaving the United States, that the residence abroad was for the purpose of working for the United States Government, a United

States institution of research, or a United States firm engaged in the development of foreign trade. Act of June 25, 1936, 49 Stat. 1925 (repealed 1940).

This amended statute was found to be inadequate. It was discovered that aliens came to the United States for short periods of time, declared their intention to be naturalized, applied for and received the benefits of the statute, and then returned to their employment abroad. *In re Pinner's Petition*, 161 F. Supp. 337, 339 (N.D. Cal. 1958), citing H. Rep. No. 2659, 75th Cong., 3d Sess. (1938). The statute was therefore further amended to limit its benefit to aliens who had resided in the United States for at least 1 year prior to applying for preservation of their United States residence. Act of June 29, 1938, 52 Stat. 1247 (repealed 1940).

In 1952, Congress added the requirement that an alien be physically present in the United States for at least one half of the required 5-year residence period for naturalization. This requirement did not apply to aliens working for or under contract with the United States Government. The 1952 revisions did, however, add a new qualification to the 1-year residency requirement which was already in effect for such aliens. This new qualification required them not only to reside in the United States for 1 year, but to actually be continuously physically present in the United States during that time. Immigration and Nationality Act of 1952, section 316(b), 8 U.S.C. § 1427(b). These provisions remain in effect.

It is clear from this history of revisions to the residence and physical presence requirements that Congress intended to ameliorate the harshness of the requirements by providing some exemptions. It is equally clear that the exemptions were meant to be specific and exclusive. While Congress provided some relief from the usual residence and physical presence requirements for certain persons, it also levied specific conditions before this relief could be granted.

IV. *THE "PHYSICAL PRESENCE" REQUIREMENT OF SECTION 316(b) CANNOT BE LIBERALLY CONSTRUED*

The crucial language in the section 316(b) exemption is that requiring a person to be "physically present" for an "uninterrupted period of at least one year." This language is very similar to the physical presence language of the suspension of deportation provision in section 244 of the Act, 8 U.S.C. § 1254 (1982). In addition, the history of the suspension of deportation provision is also very similar to that of section 316(b), an ameliorative provision made more restrictive over time, which provides a benefit to certain spe-

cific categories of people. For these reasons, section 316(b) and section 244 should be interpreted and applied consistently with one another.

Section 244 of the Act states in part that an alien may be granted suspension of deportation if he has "been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application." The Supreme Court in *INS* v. *Phinpathya,* 464 U.S. 183 (1984), held that this requirement was meant to be literally construed. The court stated that the "statutory switch from 'continuous residence' to 'continuous physical presence' was no simple accident of draftsmanship." In the Court's view, the change was made to prevent abuses, and Congress would not have made the statutory change if it had been seeking only to require the maintenance of a "domicile or general abode." *Id.* at 191. The Court further stated that the "citizenship and suspension of deportation provisions are interrelated parts of Congress' comprehensive scheme for admitting aliens into this country," *id.* at 191–92, and that it is clear "that Congress intended strict threshold criteria to be met" before an alien could qualify for suspension of deportation. *Id.* at 195.

In the face of this holding by the Supreme Court, construing similar language with a similar legislative history, it is not possible to construe the uninterrupted physical presence requirement of section 316(b) to allow departures.

## V. *CONCLUSION AND ORDER*

The ameliorative effect of *Rosenberg* v. *Fleuti, supra,* therefore is not properly extended to statutory schemes premised on a requirement of continuous physical presence. We concur in the decision of the district director and we will dismiss this appeal accordingly.

**IT IS ORDERED:** that the appeal be and the same is hereby dismissed.