## In re SAMOWICH.
### No. 9979.

District Court, W. D. Washington, S. D.
March 14, 1947.

Stuart H. Elliott, of Tacoma, Wash., for petitioner, Anton Samowich.

J. Charles Dennis, U. S. Atty., and Guy A. B. Dovell, Asst. U. S. Atty., both of Tacoma, Wash., in opposition to petition.

LEAVY, District Judge.

The petitioner herein is a fifty-nine-year-old native and national of what was formerly Lithuania, and has resided in the United States since June 24, 1909. He filed his first declaration of intention to become a citizen January 3, 1913, in the Superior Court of the State of Washington for Pierce County. He thereafter registered under the provisions of the Draft Act of May 18, 1917, for the First World War, c. 15, § 2, 40 Stat. 77, 50 U.S.C.A. § 226 note.

November 2, 1918, the petitioner executed a withdrawal of his declaration of intention to become a citizen of the United States, in which he stated that he understood such withdrawal would operate and be held to cancel his declaration of intention to become

an American citizen and forever debar him from becoming one, in accordance with the Registration and Drafting of Aliens Act of July 9, 1918, C. 143, Subchap. XII, § 4, 40 Stat. 885, also the Act of August 31, 1918, C. 166, § 1, 40 Stat. 955, which amended the Draft Act of May 18, 1917, 50 U.S. C.A. § 226 note.

The petition to withdraw the alien's declaration of intention to become a citizen was received by the Bureau of Naturalization December 23, 1918. Based upon this application, a petition was filed by the Chief Naturalization Examiner in the Superior Court of the State of Washington for Pierce County on April 12, 1919, praying that the declaration of intention made by the alien on January 3, 1913, be cancelled and held for naught. Thereafter, on April 14, 1919, an order was entered by that court decreeing that the declaration of intention of the alien be cancelled and that *he be forever debarred from becoming a citizen of the United States.*

March 3, 1928, the petitioner filed in this court his second declaration of intention, and, on February 9, 1935, based upon such declaration, he made application for citizenship. The petition came on for final hearing May 27, 1935, and, upon such hearing, a formal order was entered denying the application with prejudice on the ground that the petitioner had secured a cancellation of his original declaration in order to avoid military service under the then existing Draft Act, thus securing exemption from liability for military service. This court expressly decreed that *he was to be forever debarred from becoming a citizen,* as provided in the Act of July 9, 1918, as amended by the Act of February 11, 1931, C. 118, 46 Stat. 1087.

October 9, 1945, the petitioner, then being the spouse of an American citizen, filed his petition for citizenship in this court, establishing eligibility under the provisions of § 310(b) of the Nationality Act of 1940, 54 Stat. 1144, Subchap. III, 8 U.S.C.A. § 710(b).

December 30, 1946, this third and last petition came on for hearing before me. The petitioner was recommended for citizenship by the Naturalization Service at

such hearing, and the facts herein enumerated were brought to my attention. It was asserted by the Examiner that the petitioner had met all the qualifications, and measured up to the standards required of aliens seeking citizenship through naturalization. Whereupon, the matter of granting or denying citizenship was submitted for determination.

In view of the order of the state court granting the application of the petitioner to withdraw his declaration of intention and thereby avoid liability for military service, and forever debarring him from citizenship, and in view of the subsequent order of this court unqualifiedly debarring him from forever becoming a citizen, it was determined that his petition herein should be given special consideration. Upon my own motion, the petition was set down for hearing. The Naturalization Service having recommended the petitioner for citizenship, I requested the United States Attorney to appear adverse to such recommendation. The petitioner employed counsel, and the matter came on for hearing January 13, 1947. Oral and documentary evidence was introduced, and briefs were submitted by petitioner's attorney in his behalf and by the United States Attorney in opposition thereto.

The petitioner contends that the previous orders entered in connection with the withdrawal of his declaration of intention and his later application for citizenship, are not res judicata, because the Nationality Act of 1940 expressly repealed the statutes which resulted in the orders forever debarring him from citizenship. 8 U.S.C.A. § 747(a). He further contends that the Act of February 11, 1931, was effective at the time of the entry of the order of this court on May 27, 1935, which Act had the effect of restoring to him any rights that he may have lost by reason of the original withdrawal of his declaration of intention, and nullified the order of the state court made April 14, 1919.

The petitioner relies upon two District Court decisions in support of the position he takes: In re Aldecoa, 22 F.Supp. 659; Petition of Otness, 49 F.Supp. 220.

The United States Attorney contends that the Act of February 11, 1931, at no time was applicable to the petitioner herein, and that the cases of In re Urmeneta, D.C., 42 F.Supp. 138, and Lakebo v. Carr, 9 Cir., 111 F.2d 732, are controlling.

The proceedings in which the order made by the state court and, likewise, the later order by this court in denying citizenship were both judicial proceedings, and the orders were decrees from courts of record and became final when not modified or reversed. The Supreme Court of the United States, in passing upon an order in a naturalization proceeding in Tutun v. United States, 270 U.S. 568, 577, 46 S.Ct. 425, 427, 70 L.Ed. 738, stated the law as follows: "The judgment entered, like other judgments of a court of record, is accepted as complete evidence of its own validity unless set aside. * * * It may not be collaterally attacked."

The petitioner maintains that these orders did not constitute res judicata of the matter presently before the court because of the repeal of the laws in existence when they were made. He cites numerous authorities in support of his contention. Without endeavoring to review them here, an examination discloses that the facts are not similar to those involved in this case, for the reason that, in the cited cases, legislative enactment subsequent to the entry of the decrees expressly conferred upon the parties a new legal status. Such is not the situation here, since, by the enactment of the Nationality Act of 1940, no provision was made for conferring new privileges upon an alien already burdened by having been twice disqualified and adjudicated as one *forever debarred from the rights of citizenship.*

In Re Aldecoa, supra, the situation as to the facts is, in many respects, similar to those in the instant case. There, citizenship was granted. However, the court, in that case, turned its decision upon a construction placed upon the Act of February 11, 1931, which I cannot follow. That Act was passed by Congress for the sole purpose of giving consideration to those aliens who, in the first instance, did not surrender their declarations of intention, but entered the military service, and, after a period of such service, secured their discharge by then surrendering their declarations. The Congressional report upon the

enactment of this bill (71st Congress, 2d Session, Report No. 910) states:

"The bill (H.R. 5627) would permit the naturalization of an alien who, being a citizen or subject of a country neutral in the World War, withdrew his declaration of intention to become a citizen of the United States in order *to secure discharge from the military service,* * * *

"The provision of the act of July 9, 1918, forever debarring from the United States citizenship neutral aliens who withdrew their declarations of intentions ('first papers') in order to avoid military service was a proper and justifiable enactment. Its provisions have been held to extend, however, not only to those aliens who, during the World War, sought to evade military service *but also to those who actually served.* * * *

"The bill (H.R. 5627) would cure this situation, not only in respect of the one case which has come to the committee's attention, but to any other *similar* case which may be found." (Emphasis supplied.)

From the report and the language of the act itself, it is evident that it was intended to apply only to those who were in military service, as distinguished from those who were subject to liability for military service. The language used is "discharge from military service," as distinguished from "liability to military service" as used in the Draft Act. I am, therefore, of the opinion that the Act of February 11, 1931, has no bearing one way or the other in this case, and do not give it the application that it received in the Aldecoa case, supra.

The petitioner relies heavily on the Otness case, supra, decided in the District Court of the Northern District of California February 15, 1943. There, the District Court made no reference whatsoever to the decision of the Circuit Court of Appeals of this circuit some three years earlier, Lakebo v. Carr, supra. The court in

the Otness case interpreted the saving clause in the Nationality Act of 1940 directly contrary to the interpretation given in the Urmeneta case, 42 F.Supp. 138, supra, by a District Court in the Eastern District of Wisconsin. I am impelled to the conclusion that the reasoning applied in the Urmeneta case is sound. I cannot accept the conclusion reached in the Otness case.

Therefore, it is my conclusion that the saving clause in the Nationality Act of 1940 did no more than maintain the status quo of situations such as are here presented, and that the holding in Lakebo v. Carr, supra, which comes from the Appellate Court of this circuit, is, and must be accepted as, the law. It was there determined that an order of the lower court denying citizenship under a set of facts very similar to those we have here under consideration, became res judicata, and was not open to collateral attack by a second, or subsequent, naturalization proceeding.

Including the decision in the present case, there are now four opinions by four separate and distinct Federal District Courts on this matter—two of which would hold the petitioner qualified for citizenship, and two would hold him disqualified. In addition, we have the Lakebo case, decided by the Circuit Court of Appeals, unqualifiedly holding that the doctrine of res judicata must be applied.

In view of the unsettled situation thus created, it would seem that the Naturalization Service, the petitioner herein, and others interested in matters of this nature, would be greatly assisted by having the appellate court review this decision, and determine whether or not it distinguishes the rule announced in the Lakebo case by reason of the later repeal of the statutes there involved.

The petition for naturalization of Anton Samowich will be denied, and an order to that effect may be submitted.