## UNITED STATES *v.* MENASCHE.

No. 104.   Argued March 1, 1955.—Decided April 4, 1955.

*Gray Thoron* argued the cause for the United States. With him on the brief were *Solicitor General Sobeloff, Assistant Attorney General Olney, L. Paul Winings* and *Lorraine Wall Hurney.*

*Peyton Ford* argued the cause and filed a brief for respondent.

Mr. Justice Clark delivered the opinion of the Court.

This case and *Shomberg* v. *United States, post,* p. 540, present questions concerning the proper interpretation of the general savings clause of the Immigration and Nationality Act of 1952, 66 Stat. 280, 8 U. S. C. § 1101, note. This clause, § 405 of the Act, provides as follows:

"(a) Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes [*sic*], conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect. . . .

"(b) Except as otherwise specifically provided in title III, any petition for naturalization heretofore filed which may be pending at the time this Act shall take effect shall be heard and determined in accordance with the requirements of law in effect when such petition was filed."

The issue here presented is whether an alien, who filed his declaration of intention to become an American citizen before the effective date of the 1952 Act, and who otherwise complied with the naturalization laws then in

530

effect, has a "status," "condition," or "right in process of acquisition" preserved by § 405 (a), *supra*, despite the fact that his petition for naturalization was filed after the effective date of the new Act. The Government contends that petitions for naturalization are to be governed exclusively by § 405 (b), and that since respondent does not come within the terms of that subsection—his petition not having been filed before the effective date of the new Act—the savings clause is inapplicable and the substantive provisions of the 1952 Act apply.

The facts are not in dispute. Respondent was admitted for permanent residence in the United States on March 7, 1948, and the following month he filed his declaration of intention to become a citizen. During the next five years, respondent was absent from the United States on business for several periods of less than a year each. Although the aggregate of these absences was some forty-four months, it is conceded that respondent had not at any time abandoned his American residence. Accordingly, all other prerequisites to citizenship having been satisfied, respondent was entitled to be naturalized under the Nationality Act of 1940 upon completing five years of residence. 54 Stat. 1142, 8 U. S. C. (1946 ed.) § 707. But before this period had run, the Immigration and Nationality Act became effective on December 24, 1952. Section 316 (a) of this Act, 66 Stat. 242, 8 U. S. C. § 1427 (a), imposed a new requirement of physical presence: to be eligible for citizenship, an alien must be physically present in the United States for at least one-half the period constituting his five-year residence. When, on April 24, 1953, Menasche filed his petition for naturalization, he lacked 14 months of fulfilling this new requirement. Thus, if the 1952 Act applies to respondent's case, it is clear he may not be naturalized, while under the 1940 Act he is admittedly eligible for citizenship.

The district judge admitted Menasche to citizenship, holding that the 1940 Act governs because respondent enjoyed a status, condition, and right in process of acquisition preserved by § 405 (a) of the new Act.   115 F. Supp. 434.   The Court of Appeals affirmed.   210 F. 2d 809. We granted certiorari because of the importance of the questions presented in this and the companion case of *Shomberg* v. *United States, supra,* in the administration of our nationality laws.   348 U. S. 811.

In interpreting § 405 of the Immigration and Nationality Act in relation to the facts of this case, we must consider the historical background of the savings clause and of the procedure for filing declarations of intention.   The declaration of intention was introduced into our law by the second Act of Congress on the subject of naturalization, 1 Stat. 414 (1795), and remained an integral part of our naturalization procedure until the Act of 1952 dispensed with it as a prerequisite to citizenship. 66 Stat. 254, 8 U. S. C. § 1445 (f).   For the more than 150 years between these enactments, Congress considered it appropriate to require aliens to declare their intention to become United States citizens several years before they petitioned for naturalization.   Exceptions were made from time to time to avoid hardship or to expedite the naturalization of a favored group, but until the 1952 enactment the declaration constituted the "first papers" toward American citizenship in the usual naturalization procedure.   See Joint Hearings before the Subcommittees of the Committees on the Judiciary, 82d Cong., 1st Sess., on S. 716, H. R. 2379, and H. R. 2816, pp. 79–80, 723–725; S. Rep. No. 1515, 81st Cong., 2d Sess., pp. 732–734.

Savings clauses of the type here involved—broad, inclusive provisions—date back to the general statutes on immigration and naturalization enacted in the early part of this century.   The Naturalization Act of 1906, 34 Stat.

596, the first real codification of our nationality laws, did not contain a general savings clause, but sought to protect certain prior rights by means of specific provisions. 34 Stat. 597, 599, 603. Nor was there an over-all savings provision in the first of the general immigration laws following the turn of the century. 32 Stat. 1213 (1903). The germ was there, however, in a clause stating that "nothing contained in this Act shall be construed to affect any prosecution or other proceeding, criminal or civil," begun under a prior Act. 32 Stat. 1220. In subsequent immigration laws, the predecessors of the instant provision could be more clearly discerned. The Immigration Act of 1907 provided that nothing in the Act "shall be construed to affect any prosecution, suit, action, or proceedings brought, or any act, thing, or matter, civil or criminal, done or existing at the time of the taking effect of this Act." 34 Stat. 907. To the same effect is the savings clause of the Immigration Act of 1917. 39 Stat. 897. In the years that followed, amendments to the immigration and naturalization laws were enacted with more limited savings clauses, tailored to the special changes made by the new legislation. 40 Stat. 545, 547, 548; 40 Stat. 559, amended, 55 Stat. 252; 42 Stat. 1022; 43 Stat. 169; 46 Stat. 854.[1] These provisions, though differing in their terms, manifested an intention on the part of Congress to save rights which had accrued under prior laws.

The direct antecedent of the savings clause here involved appeared as § 347 of the Nationality Act of 1940, 54 Stat. 1168, 8 U. S. C. (1946 ed.) § 747, the last legislation prior to 1952 to deal with our general system of naturalization. Like the present § 405, the provision in the 1940 Act was divided into two subsections. The first of these, subsection (a), expanded upon the multiplicity of legal

---

[1] See also 54 Stat. 1150, 8 U. S. C. (1946 ed.) § 726; 64 Stat. 1015, 8 U. S. C. (1946 ed., Supp. V) § 725 (b).

subjects preserved by the 1907 and 1917 immigration laws.[2] Subsection (b), on the other hand, introduced an entirely new wrinkle by providing that pending naturalization petitions "shall be heard and determined within two years thereafter in accordance with the requirements of law in effect when such petition was filed."[3] The litigation under this section, involving, first, the scope of subsection (a) and, secondly, the relation between the two subsections, throws considerable light on the parallel problems under § 405 presented in the instant case.

The 1952 Act made the enumeration of matters preserved by subsection (a) more complete and all-inclusive by adding: "status," "condition," "right in process of acquisition," "liability," and "obligation." The change was undoubtedly prompted by several sets of inconsistent decisions dealing with the vague terminology in § 347 (a) of the 1940 Act preserving "any act, thing, or matter, civil or criminal." The first of these concerned the question whether the withdrawal of a declaration of intention to avoid service in the armed forces constituted an "act" existing under the prior law which continued to debar the alien from citizenship. Compare

---

[2] "Sec. 347. (a) Nothing contained in either chapter III or in chapter V of this Act, unless otherwise provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization or of citizenship, or other document or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any act, thing, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, acts, things, or matters, the statutes or parts of statutes repealed by this Act, are hereby continued in force and effect."

[3] "(b) Any petition for naturalization heretofore filed which may be pending at the time this Act shall take effect shall be heard and determined within two years thereafter in accordance with the requirements of law in effect when such petition was filed."

*Petition of Otness,* 49 F. Supp. 220, with *In re Urmeneta,* 42 F. Supp. 138, and *In re Samowich,* 70 F. Supp. 273. A second and more significant conflict concerned inchoate rights to derivative citizenship, which, when proper conditions were met, required only the passage of time to ripen into full citizenship. When the 1940 Act changed certain of the conditions in this process, the question arose whether those whose time had begun to run before the 1940 Act took effect were to be governed by the old law or the new. The Second Circuit held that the new law applied, because § 347 (a) of the 1940 Act did not extend to "a mere condition, unattended by any affirmative action." *United States ex rel. Aberasturi* v. *Cain,* 147 F. 2d 449, 452. The Court of Appeals for the District of Columbia disagreed, construing the broad language of § 347 (a) as covering "rights partly accrued" and "rights in process of acquisition." *Bertoldi* v. *McGrath,* 86 U. S. App. D. C. 1, 2, 3, 178 F. 2d 977, 978, 979. This latter conflict must have been paramount in the minds of Congress when the first subsection of the savings clause was broadened. See Analysis of S. 3455, 81st Cong., 2d Sess., pp. 361–1 and 361–2 (prepared by the Immigration and Naturalization Service for the committees of Congress considering this legislation). We conclude that Congress intended to adopt the principle of the *Bertoldi* case that "the new act should take effect prospectively." 86 U. S. App. D. C., at 2, 178 F. 2d, at 978. This is, after all, no more than a reaffirmation of the principle underlying the less sweeping 1940 provision. In a report to the congressional committees considering this earlier section, it was said that the provision "contains the customary clauses by which the status quo is maintained in relation to naturalization proceedings and other related matters." Report of the Joint Departmental Committee, reproduced in Hearings before House Committee on Immigration and Naturalization, 76th Cong.,

1st Sess., on H. R. 6127, superseded by H. R. 9980, 411, 484.

The Government would have us limit the 1952 extension of subsection (a) to situations concerning derivative citizenship, arguing that this problem was entirely responsible for the new language on status, condition, and right in process of acquisition. With this we cannot agree. The change in the section was designed to extend a savings clause already broadly drawn, and embodies, we believe, congressional acceptance of the principle that the statutory *status quo* was to continue even as to rights not fully matured. It should be noted, further, that the conflict between *Aberasturi* and *Bertoldi* involved a situation where the alien had failed to take *any* affirmative action to assert his claim to citizenship. Even the more restrictive *Aberasturi* opinion recognized that affirmative action by the alien might alter the result there reached. 147 F. 2d, at 452. If Congress was willing to preserve a "mere condition, unattended by any affirmative action," we think its savings clause also reaches instances, such as this, where affirmative action is present. The whole development of this general savings clause, its predecessors accompanying each of the recent codifications in the field of immigration and naturalization, manifests a well-established congressional policy not to strip aliens of advantages gained under prior laws. The consistent broadening of the savings provision, particularly in its general terminology, indicates that this policy of preservation was intended to apply to matters both within and without the specific contemplation of Congress.

The Government argues against hinging statuses, conditions and rights in process of acquisition on the filing of a declaration of intention, because, it contends, the 1952 Act has rendered such declarations totally meaningless as far as naturalization proceedings are concerned. They are no longer a prerequisite to naturalization and

they confer no special advantage on the alien-declarant.[4] But all this is immaterial. First, the congressional resolution of the *Bertoldi-Aberasturi* conflict indicates a willingness, at least in some situations, to preserve rights in process of acquisition without requiring affirmative action on the part of the alien. It could be argued in the present case that it was Menasche's residence, rather than his filing of the declaration, which gave rise to his rights under § 405 (a). And this approach would have the virtue of eliminating the inequitable treatment envisaged by the Government as regards those special groups of aliens who did not have to file declarations as a prerequisite to citizenship. But while our decision could be rested on this ground, it is sufficient here merely to refer to the provision in § 405 (a), derived verbatim from § 347 (a) of the 1940 Act, preserving the "validity" of declarations of intention "valid at the time this Act shall take effect."

The Government contends, however, that even if § 405 (a), considered alone, covers this case, § 405 (b) deals specifically with naturalization petitions and by necessary implication excludes their coverage in § 405 (a). As we read the statute, subsection (b) merely implements and emphasizes the operation of its forerunner. It is clear, first, that subsection (b) is not a specific exception to § 405 (a), since *both* subsections state that prior law should apply in certain circumstances. The slight negative implication derived from the fact that § 405 (b) applies to *pending* petitions for naturalization, and not to

---

[4] The alien may, if he wishes, file a declaration of intention with the Immigration and Naturalization Service. 66 Stat. 254, 8 U. S. C. § 1445 (f). The apparent object of this optional provision is to preserve the rights of aliens under state laws, where, for example, there may be a requirement that a legally resident alien shall have filed his declaration of intention before he can obtain work. See Joint Hearings on S. 716, H. R. 2379 and H. R. 2816, *supra*, p. 80; S. Rep. No. 1515, *supra*, p. 738.

those filed after the effective date of the new Act, is overcome by the broad sweep of § 405 (a) and its direction that prior law applies unless the Act "otherwise *specifically* provide[s]." [5]  (Emphasis supplied.)

This view is strengthened by the relation between the predecessors of § 405 (a) and (b).  The Report of the Joint Departmental Committee, *supra*, at 484, stated that under § 347 (b) of the 1940 Act "a period of 2 years would be granted during which any petition for naturalization filed prior to the enactment of the new measure might be heard under the law in effect when the proceeding was begun."  The approach of the courts, in dealing with pending naturalization petitions alleged to be governed by the 1940 savings clause, was generally to see whether petitioner's rights were saved by § 347 (a), and then, if applicable, apply the two-year limitation of § 347 (b). See *In re Shaver*, 140 F. 2d 180; *Petition of La Bella*, 52 F. Supp. 980; *Petition of Hirsch*, 50 F. Supp. 638; *In re McInnis*, 50 F. Supp. 303.  But cf. *Petition of Ferrara*, 43 N. Y. S. 2d 244.  Thus § 347 (a) was considered the source

---

[5] It is possible, although we do not pass on the point in this opinion, that § 405 (b) serves a function which carries with it a negative implication different from that advanced by the Government.  Section 405 (b) provides that pending petitions for naturalization shall be governed by the "law in effect *when such petition was filed.*" (Emphasis supplied.)  Section 405 (a), on the other hand, provides that nothing in the new Act shall "affect" any of the enumerated subjects, preserving the law as it existed *immediately prior to the effective date of the Act.*  Thus § 405 (b) may "otherwise specifically provid[e]" for a law applicable to pending petitions different from the law preserved by § 405 (a) for other protected interests.  We have not fully considered, in passing on the question before us, the consonance of such an interpretation with the over-all statutory scheme, but advance it merely as another illustration of the meaning which can be given § 405 (b) to avoid both the result pressed by the Government in this case and the objection that § 405 (b) is rendered redundant by holding that petitioner has rights protected by § 405 (a).

538

of rights under the savings clause, and § 347 (b) merely a special limitation on these rights. Indeed, there were two cases in which petitions for naturalization filed *after* the effective date of the 1940 Act were considered solely in relation to § 347 (a). *In re Samowich,* 70 F. Supp. 273; *Petition of Rothschild,* 57 F. Supp. 814. These decisions ignored the supposedly obvious negative implications of § 347 (b), and cast considerable doubt on the Government's present view that § 347 (b) automatically removed from the coverage of prior law petitions filed after the effective date of the 1940 Act. Thus the construction advanced by the Government concerning the relation between § 405 (a) and § 405 (b) would not continue the relation between the predecessor provisions, but would actually be a marked departure. The only significant change made in subsection (b) by the 1952 Act was the deletion of the two-year time limit, and there is nothing to indicate that Congress, in making this change, intended to alter the entire structure of the savings clause by making § 405 (b) the exclusive provision for naturalization petitions. See Analysis of S. 3455, *supra.* The few decisions considering this problem under the 1952 Act accord with the decisions of the District Court and Court of Appeals in the instant case, holding that § 405 (a) preserves rights accruing in the pre-petition stages of the naturalization process. *United States* v. *Pringle,* 212 F. 2d 878, affirming 122 F. Supp. 90; *In re Jocson,* 117 F. Supp. 528. We believe that Congress so intended.

The Government's contention that § 405 (a) does not apply to any phase in the processing of naturalization petitions would defeat and destroy the plain meaning of that section. "The cardinal principle of statutory construction is to save and not to destroy." *Labor Board* v. *Jones & Laughlin Steel Corp.,* 301 U. S. 1, 30. It is our duty "to give effect, if possible, to every

clause and word of a statute," *Montclair* v. *Ramsdell,*
107 U. S. 147, 152, rather than to emasculate an entire
section, as the Government's interpretation requires.
Accordingly, we hold that respondent's inchoate right
to citizenship is protected by § 405 (a) and is not
defeated by any implication stemming from § 405 (b).
All that remains, therefore, is to look to § 316 (a), which
imposes the new requirement of physical presence, to de-
termine whether it "otherwise specifically provide[s]"
that the new Act is to apply to respondent's situation.   It
is clear that it does not.   Section 316 (a) merely says
that, "except as otherwise provided," the stated degree of
physical presence shall be required, and this may be
viewed as a reference, *inter alia,* to § 405 (a), strengthen-
ing our conclusion that prior law applies.

The District Court and the Court of Appeals were cor-
rect in concluding that § 405 (a) preserved respondent's
inchoate rights under the prior law, and their decisions
are accordingly

*Affirmed.*

MR. JUSTICE HARLAN took no part in the consideration
or decision of this case.