**Antonio Hector MILLAN–GARCIA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 19351.**

United States Court of Appeals
Ninth Circuit.

April 5, 1965.

David C. Marcus, Los Angeles, Cal., for the petitioner.

Thomas R. Sheridan, U. S. Atty., Donald A. Fareed, Asst. U. S. Atty., Chief of Civil Sec., James R. Dooley, Asst. U. S. Atty., Los Angeles, Cal., for the respondent.

Before JERTBERG, and BROWNING, Circuit Judges, and BOWEN, District Judge.

JERTBERG, Circuit Judge.

Petitioner seeks to upset an order of deportation entered against him on April 3, 1964 following hearings before a special inquiry officer of the Immigration and Naturalization Service. Jurisdiction is founded upon 8 U.S.C.A. § 1105a(a), as added, (1961).

We will first review petitioner's activities relevant to this appeal from the time of his entry into the United States.

Petitioner is a native of and citizen of the Republic of Mexico who entered this country with his mother about 1949 at San Ysidro, California when he was thirteen years of age. Although Form I–404–A, Certificate of Admission of Alien, executed pursuant to the entry indicates that the purpose in coming and length of intended stay was for "business and pleasure 1 day trips", petitioner testified at the hearing below that his mother had brought him to the United States for the purpose of residing indefinitely. The special inquiry officer found that petitioner was not in possession of an immigration visa at that time and that he has never been admitted into the United States as an alien for permanent residence.

Petitioner served two years active duty with the United States Army, from March 28, 1955 to April 1, 1957 and was thereafter honorably discharged. He left the United States for short periods once in 1959 and again in 1962 and on each occasion falsely represented upon his return to the United States that he was an American citizen. Petitioner testified at the hearing that he had, while a college student, attended several meetings of the Socialist Workers Party, the Young Socialist Alliance, the Fair Play for Cuba movement, and the July 26 Movement. He further testified that he had believed in the principles of Communism in the past but had never knowingly supported or furthered the interests of Communism. He testified that he would not bear arms against any Spanish speaking country in the event of a war between the United States and that country. In a sworn statement before an officer of the Immigration and Naturalization Service, petitioner stated that he had participated in three demonstrations organized by the Fair Play for Cuba Committee one of which was in protest to the ill-fated "Bay of Pigs" incident. Petitioner has never registered

as aliens are required to do.[1] He is now 28 years of age, unmarried, and fluent in the English language. His close relatives living in the United States are a sister and an aunt.

On July 31, 1963 in an interview between petitioner and an officer of the Immigration and Naturalization Service, the following colloquy took place:

"Q Under Section 329 of the Immigration and Nationality Act [8 U.S.C.A. § 1440, as amended, (1961)],[2] you appear to be eligible to make application for naturalization as a citizen of the United States. Do you desire to do so?

"A Yes, I would."

Thereafter, in August, 1963, petitioner executed and submitted an Application to File Petition for Naturalization on U.S. Department of Justice Form N–400. It does not appear that a Petition for Naturalization (Form N–405) was executed or filed. Before further action was taken in connection with said application, the Immigration and Naturalization Service issued, on March 17, 1964, an Order to Show Cause and Notice of Hearing which was served on petitioner. The order charges that petitioner is subject to deportation pursuant to:

"Section 241(a) (1) of the Immigration and Nationality Act, [8 U.S. C.A. § 1251(a) (1), (1952)] in that,

at the time of entry you were within one or more of the classes of aliens excludable by the law existing at the time of such entry, to wit, an immigrant not in possession of a valid immigration visa, in violation of sec. 13(a) of the act of May 26, 1924, and not exempt from the presentation thereof by the said act or regulations made thereunder."

Petitioner was ordered to appear for hearing before a special inquiry officer on March 24, 1964. The reverse side of the order served on petitioner stated among other things that:

"If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Immigration and Naturalization Service."

At the hearing held on March 24, 1964, petitioner admitted that he was a citizen of Mexico; that he had entered the United States with his mother at San Ysidro, California in about 1949; and that he was brought into the United States for the purpose of residing indefinitely. When asked if he then possessed or presented a valid immigration visa, he replied that he did not know and declined to plead to the charge contained in the Order to Show Cause. The charge was thereupon considered by the special in-

---

1. "§ 1302. Registration of aliens

"(a) It shall be the duty of every alien now or hereafter in the United States, who (1) is fourteen years of age or older, (2) has not been registered and fingerprinted under section 1201(b) of this title or section 30 or 31 of the Alien Registration Act, 1940, and (3) remains in the United States for thirty days or longer, to apply for registration and to be fingerprinted before the expiration of such thirty days." 8 U.S.C.A. § 1302 (1952).

2. "§ 1440. Naturalization through active-duty service in the armed forces during World War I or World War II or the Korean hostilities—Requirements

"(a) Any person who, while an alien or a non-citizen national of the United States, has served honorably in an active

duty status in the military, air, or naval forces of the United States during either World War I or during a period beginning September 1, 1939, and ending December 31, 1946, or during a period beginning June 25, 1950, and ending July 1, 1955, and who, if separated from such service, was separated under honorable conditions, may be naturalized as provided in this section if (1) at the time of enlistment or induction such person shall have been in the United States, the Canal Zone, American Samoa, or Swains Island, whether or not he has been lawfully admitted to the United States for permanent residence, or (2) at any time subsequent to enlistment or induction such person shall have been admitted to the United States for permanent residence. * * *."

quiry officer not to have been admitted. The Government offered into evidence two certificates signed by the Chief, Records Administration and Information Branch of the Immigration and Naturalization Service which certify that no record exists in the Service records showing petitioner has ever lawfully been admitted to the United States for permanent residence or that he has been naturalized. When asked by the special inquiry officer if he desired to apply for the privilege of voluntary departure at his own expense rather than being deported, petitioner replied that he did.

In his oral decision made April 3, 1964, the special inquiry officer found that the charge set out in the Order to Show Cause is sustained, and that the application for the privilege of voluntary departure is denied as a matter of discretion. Petitioner was ordered to be deported from the United States to Mexico on the charge contained in the Order to Show Cause.

That same day, April 3, petitioner filed a Notice of Appeal to the Board of Immigration Appeals in which he appealed from a denial of vountary departure. On May 21, 1964, the Chairman of the Board of Immigration Appeals: (1) affirmed the finding of the special inquiry officer, that petitioner has never been admitted for permanent residence and has never been granted citizenship; (2) found that the special inquiry officer's denial of voluntary departure was not so capricious or arbitrary as to require reversal; and (3) dismissed the appeal.

Turning now to petitioner's specifications of error, it is first argued that petitioner was denied due process of law and a fair hearing in the Government's failure to appoint counsel to represent him. Petitioner is now represented by counsel on this appeal.

Section 242(b) (2) of the Immigration and Nationality Act [8 U.S.C.A. § 1252 (b) (2), (1952)] provides in material part that:

"(2) the alien shall have the privilege of being represented (*at no expense to the Government*) by such counsel, authorized to practice in such proceedings, as he shall choose;" (Italics supplied).

██ It is clear that the privilege of being represented by counsel expressed in the statute cited above is one which may be waived in a deportation proceeding. Giaimo v. Pederson, 289 F.2d 483, (6th Cir. 1961); United States ex rel. Dentico v. Esperdy, 280 F.2d 71, (2nd Cir. 1960); United States ex rel. Mustafa v. Pederson, 207 F.2d 112, (7th Cir. 1953); Coons v. Boyd, 203 F.2d 804, (9th Cir. 1953); Cf. Samala v. Immigration and Naturalization Service, 336 F.2d 7, (5th Cir. 1964). It is apparent from the transcript of the proceedings at both the March 24th hearing [3] and during the resumption of the hearing on April 3rd;[4] that the petitioner voluntarily and understandingly waived the privilege of representation by retained counsel. Since there there is nothing to indicate that petitioner was unable to afford a lawyer, no other question is presented.

3. "Q Mr. Millan, you speak and understand English, do you not?
"A Yes, I do.
"Q This is a hearing to give you an opportunity to show cause why you should not be deported from the United States. Do you understand?
"A Yes sir, I understand.
"Q During this proceeding you have the right to be represented by counsel of your own choice, at no expense to the government. Have you retained counsel to represent you?
"A No, I haven't.

"Q Are you willing to proceed with your hearing at this time without counsel?
"A Yes, I am."
*        *        *        *        *

4. "Q At the previous hearing you were advised that you have the right to be represented by counsel. You still have that right at this time. Have you retained counsel to represent you?
"A No, I haven't.
"Q Are you willing to proceed with your hearing at this time without counsel?
"A Yes."

Petitioner argues that he was not granted a reasonable continuance of the hearing proceedings to employ counsel of his own choosing. But petitioner does not assert that a request was at any time made for such a continuance nor does the record reflect any such request. It does not appear that petitioner has made any effort to secure counsel or that he desired one. When questioned by the special inquiry officer regarding representation by counsel, petitioner indicated that he was willing to proceed without counsel.

■ Petitioner also contends that he was deprived of due process of law in that the was not informed of his rights under the Immigration and Nationality Act. The alleged rights which are referred to are: (1) suspension of deportation proceedings [no request for suspension of the proceedings has at any time been made]; and (2) naturalization. If we understand him correctly, petitioner alleges these rights to stem from what he claims to be his eligibility for citizenship under the terms of 8 U.S.C.A. § 1440 (a), supra, footnote 2. That statute, however, does not confer citizenship upon those meeting its requirements but merely extends eligibility for naturalization to those not otherwise qualified for citizenship. Moreover, § 1440(b), with exceptions not pertinent here, makes it clear that those who qualify under the section must, in addition, comply in all other respects to the requirements of the Immigration and Nationality Act. Inasmuch as petitioner did not have a right to a suspension of the proceedings or to citizenship, unqualifiedly, there can be no denial of due process of law in failing to inform him of such "rights" during the deportation proceedings.

Petitioner's second assignment of error deals with what petitioner alleges to be misconduct on the part of the trial attorney in examining him about his political affiliations. The only objection now made by petitioner to this line of inquiry is that the trial attorney knew petitioner was not closely associated with the various organizations the trial attorney examined him about.

The special inquiry officer advised petitioner at the March 24th hearing and before any testimony concerning petitioner's political activities was admitted into evidence that:

"If this evidence for some reason disturbs you, you may withdraw your application for the privilege of voluntary departure and that would foreclose the presentation of any evidence on that question."

Petitioner replied that he understood and did not wish to withdraw his application for voluntary departure.

■ In the light of petitioner's admittedly active participation in certain aforementioned political organizations, it cannot be said that the trial examiner's questions were groundless. Such examination was proper and relevant to petitioner's application for the privilege of voluntary departure in lieu of deportation. Viewing the record in its entirety, we find nothing therein in the attitude and conduct of the trial attorney which could be construed as prejudicial misconduct.

■ It is last urged that the institution of deportation proceedings against petitioner denied him due process of law because at that time petitioner had previously filed a Form N–400 (Application to File Petition for Naturalization) and it had not yet been acted upon.

The narrow question presented is: does an alien, by the filing of a Form N–400, thereby acquire a status or right immunizing him from the institution of deportation proceedings until the various steps leading toward naturalization have been completed and a determination made thereon. We are constrained to answer negatively.

In Shomberg v. United States, 348 U. S. 540, 75 S.Ct. 509, 99 L.Ed. 624, (1955), petitioner had filed a Form N–400 and also a Petition for Naturalization before the effective date of the Immigration and Nationality Act of 1952. Some months later, deportation proceedings were brought against the petitioner on grounds not present in the 1940 Nation-

ality Act. Petitioner there argued that he had acquired an inchoate right to citizenship protected by the savings clause of § 405(a) of the 1952 act [8 U.S.C.A. § 1101 note]. To this contention the court held:

"We agree with petitioner that, absent a specific provision to the contrary, he has rights protected by § 405(a). These stem from the filing of his Form N–400, from his petition for naturalization, and, perhaps, from his fulfillment of the five-year residence requirement. United States v. Menasche, supra, [348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615]. But we hold that § 318 specifically excepts rights under the prior law from the protection of § 405 when these rights stem from a petition for naturalization or from some other step in the naturalization process." At p. 543, 75 S.Ct. at page 511.

Section 318 of the Immigration and Nationality Act [8 U.S.C.A. § 1429 (1952)] referred to by the Court, in material part, is as follows:

"* * * Notwithstanding the provisions of section 405(b) of the Act, and except as provided in sections 327 [8 U.S.C.A. § 1438, (1952)] and 328 [8 U.S.C.A. § 1439, (1952)], no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this or any other Act; *and no petition for naturalization shall be finally heard by a naturalization court if there is pending against the petitioner a deportation proceeding* pursuant to a warrant of arrest issued under the provisions of this or any other Act: * * *" (Emphasis added).

In the instant case, petitioner cites no authority to sustain his position. He does contend that by bringing deporta-

tion proceedings against him before further action has been taken pertaining to his naturalization he was denied due process.

■■ The Fifth Amendment to the United States Constitution guarantees, *inter alia*, that no person shall "be deprived of life, liberty, or property, without due process of law". Even those who have entered the United States illegally are entitled to the full protection of the constitutional requirements of due process in deportation proceedings. Kwong Hai Chew v. Colding, 344 U.S. 590, 73 S.Ct. 472, 97 L.Ed. 576, (1953); Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953). However:

"It is well settled that the power of Congress to regulate the deportation of aliens is plenary and only in the case of extreme abuse will the courts interfere." Hyun v. Landon, 219 F.2d 404, 407, (9th Cir. 1955), affirmed, 350 U.S. 990, 76 S.Ct. 541, 100 L.Ed. 856.

"Under our law, the alien in several respects stands on an equal footing with citizens, but in others has never been conceded legal parity with the citizen. Most importantly, to protract this ambiguous status within the country is not his right but is a matter of permission and tolerance." Harisiades v. Shaughnessy, 342 U.S. 580, at 586, 587, 72 S.Ct. 512, at 517, 96 L.Ed. 586, (1952). (Footnotes omitted).

■ The extension to aliens by the Congress of the means by which they may become citizens does not imply that those seeking to fulfill such requisites acquire thereby a right to remain. Petitioner entered and remains in this country illegally, of which fact he seems well aware.[5] We find no denial of due process in the commencement of deportation proceedings against him.

5. In response to a question by the special inquiry officer at the March 24th hearing, petitioner replied, in part:

"Well, the reason I may be deported is because I am—I don't have any legal right to be here."

The title of this cause in which the respondent was designated as George K. Rosenburg, District Director of Immigration and Naturalization Service should be and is amended to read Antonio Hector Millan-Garcia, Petitioner, v. Immigration and Naturalization Service, Respondent. 8 U.S.C.A. § 1105a (a) (3), as added, (1961); Hirsh v. Immigration and Naturalization Service, 308 F.2d 562, (9th Cir. 1962).

Affirmed.