924 F.Supp. 103 (1996)
OZARK CHAPTER/SIERRA CLUB, et al., Plaintiffs,
v.
Jack Ward THOMAS, et al., Defendants.
No. 1:96 CV 12 SNL.
United States District Court, E.D. Missouri, Southeastern Division.
May 3, 1996.
*104 Russell C. Ashley, Deacy and Deacy, Kansas City, MO, for Ozark Chapter/Sierra Club, Ken Midkiff, Charles Phillips, Tom Kruzen.
Geoffrey Garver, U.S. Department of Justice, Environment & Natural Resources Div, Washington, DC, for United States Forest Service, Jack Ward Thomas, Dan Glickman, Terry Miller.

MEMORANDUM AND ORDER
LIMBAUGH, District Judge.
This matter is before the Court on cross motions for summary judgment that arise out of conflicting interpretations of the 1995 Rescissions Act. The Act calls for the Secretary to examine certain areas of the nation's forests in light of past fire and drought damage to target damaged areas for salvage sales. Because of the damaged nature of the lumber, the Act provides an expedited procedure for quick approval of the sales. The Secretary has identified an area known as Reed Hollow in Mark Twain National Forest for salvage timber sales. That decision has been challenged by the Sierra Club and a number of individual plaintiffs. The question before the Court is whether the Secretary's substantial findings meet the streamlined documentation requirements of this Act.
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this *105 burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to an examination of the facts.
On July 27, 1995 the President signed a bill which Congress had drafted to provide disaster relief. One rider to that bill was an emergency salvage timber sale program. The program allows the Secretary, either of Agriculture or Interior depending on the jurisdiction, to identify certain timbers for sale that have been damaged by the fires of 1995 or the subsequent draught. The procedure developed by Congress outlines a swift identification process that is further streamlined by an elimination of the administrative review process and an expedited review in federal court.
The Plaintiffs have brought this action to allege that the Secretary did not comply with the provisions of the Act and that his decisions were arbitrary and capricious.
The crux of the Plaintiffs' argument is that the Secretary did not comply with the sale documentation requirements of the Act because he did not conduct a sufficient investigation into this specific sale. The relevant provision of the Act is 2001(c)(1)(A), and the Plaintiffs draw their support from its first sentence:
For each salvage timber sale conducted under subsection (b), the Secretary concerned shall prepare a document that combines an environmental assessment under section 102(2) of the National Environmental Policy Act of 1969 (42 U.S.C. 4332(2)) (including regulations implementing such section) and a biological evaluation under section 7(a)(2) of the Endangered Species Act of 1973 (16 U.S.C. 1536(a)(2)) and other applicable Federal law and implementing regulations.
Under the Plaintiffs' theory, this sentence requires a report made up of two components: an environmental assessment (EA) under NEPA and a biological evaluation (BE) under the ESA. The Plaintiffs argue that because the Secretary did not compile the EA, he is not in compliance with the Act and the proposed sale must be stopped until an EA can be completed.
The Secretary and other federal defendants acknowledge the first sentence but urge the Court to study the next sentence of the Act as well:
A document embodying decisions relating to salvage timber sales proposed under authority of this section shall, at the sole discretion of the Secretary concerned and to the extent the Secretary concerned considers appropriate and feasible, consider the environmental effects of the salvage timber sale and the effect, if any, on threatened or endangered species, and to the extent the Secretary concerned, at his sole discretion, considers appropriate and feasible, be consistent with any standards and guidelines from management plans applicable to the National Forest or Bureau of Land Management District on which the salvage timber sale occurs.
The federal defendants argue that the second sentence gives full meaning to the text of the first sentence and that although the first sentence calls for specific actions to be taken in accordance with NEPA, Congress expressly gives the Secretary the power to decide the scope of that inquiry.
The Court agrees that the federal defendants have the sole discretion to determine *106 the scope of the impact evaluations. The common-sense principle of statutory construction requires that a statute be read "to give effect, if possible, to every clause ..." see U.S. v. Menasche, 348 U.S. 528, 538-539, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955). This principle forbids the Court from reading one sentence without the other. The Act does not simply call for a merger of the EA and BE as the Plaintiffs' argument would contend. It calls for, instead, one document, "a document", that provides an environmental analysis at the "sole discretion of the Secretary concerned" to delve into the environmental impact in any manner he deems "appropriate and feasible".
Having outlined the requirements of the statute, the Court turns to the administrative record to determine if the Secretary's challenged actions were arbitrary and capricious. The first decision the Plaintiffs challenge is his decision that a categorical exclusion instead of an EA under NEPA was appropriate for the proposed sale. The second challenge is that the Secretary's decision to target this area of the nation's forest was arbitrary and capricious.
An analysis of the Defendants' actions under this standard of review is very limited. In general, a district court's review of an agency's action comes under the Administrative Procedure Act 5 U.S.C. §§ 701-706. The court's scope is very narrow and requires that the court defer to "any reasonable interpretation given to the statute by the agency charged with its administration." Wilkins v. Secretary of the Interior, 995 F.2d 850, 853 (8th Cir.1993) see also, Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In the context of this case, the court's scope is even more narrow. Although the Court is given standard review authority in § 2001(f)(4), it is curtailed by those provisions which give the Secretary concerned sole discretion. This type of limit is not uncommon in areas of law in which specialized expertise plays a role. See, e.g., McCall v. U.S., 901 F.2d 548, 550 (6th Cir. 1990), cert. denied, 498 U.S. 1012, 111 S.Ct. 580, 112 L.Ed.2d 585 (1990); See also Heckler v. Chaney, 470 U.S. 821, 828, 105 S.Ct. 1649, 1654, 84 L.Ed.2d 714 (1985). In fact, courts reviewing similar questions under this Act have found that the court must be extremely deferential to the Secretary's decision. Kentucky Heartwood, Inc. v. U.S. Forest Service, 906 F.Supp. 410, 414 (E.D.Ky. 1995). With that in mind, the Court will turn to the two challenges.
The statutory analysis the Court has delineated shows that the Secretary's decision to apply a categorical exclusion to this review was appropriate. Since the statute does not call for the type of investigation the Plaintiffs seek, the Secretary's decision was correct and the Plaintiffs' first challenge fails.
The second challenge is whether the Secretary's decision to choose Reed Hollow was arbitrary and capricious. The administrative record is replete with reports on all aspects of the environmental impact of the proposed sale and the selection of the site. There are reports on the soil (3), various fire reports (2, 7, 8, & 15), reports on the species found in the area (4), with a concurring report from the Fish and Wildlife Service (20), and a number of studies on the Indiana Bat (25, 26, 27, 28, 29, & 30). There is a study of the decision to make a categorical exclusion of the area (12) and the determination of no exceptional circumstances which would have prevented that categorical exclusion (21). All of the record, both cited and uncited in this paragraph, is brought together in the Decision Memo prepared by District Ranger Terry Miller. This full record prepared by the Secretary indicates that his decision to allow salvage timber sales in the Reed Hollow area of the Mark Twain National Forrest was neither arbitrary nor capricious.
Accordingly,
IT IS HEREBY ORDERED that the Plaintiffs' Motions for Summary Judgment (# 15 & # 25) are DENIED.
IT IS FINALLY ORDERED that the Defendants' Motion for Summary Judgment (# 26) is GRANTED.