Ricardo J. CARDENAS, Plaintiff,

v.

FIRE AND POLICE COMMISSION OF the CITY OF MILWAUKEE and City of Milwaukee, a municipal corporation, Defendants.

No. Civ.A. 97–C–1238.

United States District Court,
E.D. Wisconsin.

Jan. 27, 2000.

John F. Fuchs, Jennifer R. Dorow, Fuchs, Snow, O'Connell & DeStefanis, Milwaukee, WI, for plaintiff.

Susan E. Lappen, Ass't City Att'y, Milwaukee, WI, for defendants.

**ORDER DATED 27TH JAN. 2000 GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

REYNOLDS, District Judge.

### INTRODUCTION

Plaintiff Ricardo J. Cardenas ("Cardenas") is a police officer with the City of Milwaukee police department. Cardenas has two deaf sons who are currently attending and boarding at the Wisconsin School for the Deaf ("WSD") in Delavan, Wisconsin. Defendant Fire and Police Commission of the City of Milwaukee ("FPC") denied Cardenas' request for an exception to the defendant City of Milwaukee's ("City") residency requirement so that he could live with his sons near the WSD. Before the court is Cardenas' renewed motion for summary judgment which the court will grant. The court will remand the matter back to the FPC for a finding based upon the merits of Cardenas' claim.

### *PROCEDURAL HISTORY*

Cardenas' original complaint included claims arising under the United States Constitution and the Americans with Disabilities Act (ADA) as well as a petition for a writ of certiorari appealing the FPC's denial. Generally, such a petition is made to a Wisconsin state court; however, the court exercised supplemental jurisdiction over the certiorari issue as it shares a common nucleus of operative facts with the other federal claims. 28 U.S.C. § 1367. *See also City of Chicago v. International*

*College of Surgeons,* 522 U.S. 156, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997).

On January 8, 1999, Cardenas moved for summary judgment. On the same day, the FPC and the City filed a cross-motion for summary judgment. On July 9, 1999, the court granted the FPC and the City summary judgment on Cardenas' constitutional and ADA claims, but the court granted Cardenas summary judgment on his state law claim for certiorari review. The July 9, 1999 order by the court ("July Order") found that the record was insufficient for it to determine whether certiorari should be granted or denied and ordered the FPC to submit findings of fact and conclusions of law. On September 10, 1999, the FPC submitted a summary of proceedings, findings of fact, and conclusions of law ("Summary").

On December 1, 1999, Cardenas renewed his motion for summary judgment, arguing that the Summary still does not provide the court with a sufficient record upon which the court can determine whether to grant or deny Cardenas' petition for certiorari. Therefore, Cardenas concludes, the court should overturn the FPC's decision. The FPC and the City stated that their previous filings would constitute their response to Cardenas' renewed motion for summary judgment.

Though the court granted the FPC and the City summary judgment as to the federal claims, the court, using its discretion, retains jurisdiction over the pendent state claim. *See Centres, Inc. v. Town of Brookfield,* 148 F.3d 699 (7th Cir.1998). Both parties have recognized the court's authority of the remaining claim.

### A. *The Summary—the FPC's Interpretation*

The Summary provides the basic background for Cardenas' request in its findings of fact, but merely retreads the defendants' previously submitted briefs on summary judgment in its conclusions of law. The Summary contends that the Milwaukee City Charter ("MCC") does not provide the FPC with the authority to grant the type of residency exception requested by Cardenas. The FPC reads the MCC § 5–02.7, entitled "Hardship Exceptions," to provide only one residency exception—for instances where a city employee marries an employee of another city that also has a residency requirement. The FPC interprets MCC § 5–02.8, entitled "Review Standards," as an enumeration of factors for a "business necessity exemption"; that is, "an exception to the residency requirement when an exception is necessary to fill a particular position or positions in the civil service in order to 'contribute to the development of the best service.'" (Summary at 4.) As Cardenas' situation does not fall in either the marriage or business necessity categories, the FPC claims it does not have the authority to grant his request and therefore will not consider it on its merits.

### B. *Cardenas' Interpretation*

Cardenas argues that § 5–02 does provide the FPC with the discretionary authority to grant his request, and that the FPC must produce a finding that addresses the merits of his request. First, Cardenas notes that the heading for § 5–02.7, "Hardship Exceptions" is plural. According to Cardenas, this use of the plural form suggests that the MCC permits exceptions for a variety of reasons. Second, Cardenas points out that the body of § 5–02.7(a) permits the FPC to grant a "temporary exception" to the residency requirement. Cardenas argues that under the MCC, a "temporary exception" is distinct from a marriage exception. Finally, Cardenas asserts that § 5–02.8 enumerates various "Review Standards" that are unconnected to the marriage exception, and "business necessity" is never mentioned in the section. Cardenas concludes that the MCC contemplates exceptions for reasons other than marriage.

The July Order found Cardenas' interpretation of the MCC's residency provi-

sions allowing for FPC review to be plausible, but the court stated that its finding was not intended to be definitive because the FPC had not articulated its own interpretation. (July Order at 21.) The Summary now provides the court with the FPC's reading. The Summary, however, does not refute Cardenas' version. Consequently, the court has two competing interpretations of § 5–02 which it must evaluate before rendering a decision on the certiorari question. The court finds Cardenas provides the proper reading and will require the FPC to reach the merits of Cardenas' request in a written finding to be resubmitted to the court.

### DISCUSSION

Section 5–02.9 invests the FPC with the authority to make residency determinations for police and fire department employees in lieu of the city service commission.

FIRE AND POLICE REGULATIONS. The provisions of this section shall be fully applicable to members of the police force and the fire department. However, in the case of a member of the police force or fire department, or any clerical employe thereof, the determination as to residence shall be made by the fire and police commission, and the responsibility for the administration, interpretation and enforcement of this section shall be vested in the fire and police commission.

The court recognizes that in general, deference should be given to local administrative determinations, such as the Summary. In this case, however, the Summary's position is untenable because the FPC failed to follow accepted principles of construction. Thus, the court's duty to defer to the Summary's conclusions of law is discharged. The Summary suggests that the FPC began with its conclusion in mind, and interpreted the MCC so as to be consistent with the desired result.

An examination of a text's plain meaning is the starting point in statutory interpretation. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985) ("[s]tatutory construction must begin with . . . the assumption that the ordinary meaning of [the] language [employed by Congress] accurately expresses the legislative purpose"). An examination of § 5–02's plain meaning shows that the Summary's conclusions of law must be rejected. Furthermore, the MCC's legislative history, another key tool in statutory interpretation, also favors a broader reading of § 5–02 than the one provided for in the Summary.

### A. Section 5–02.7 "Hardship Exceptions"

Section 5–02.7 states:

HARDSHIP EXCEPTIONS.

a. Whenever it shall appear to the city service commission, considering the standards hereinafter enumerated, that an employe should be granted temporary exception from the requirements of this section, the city service commission shall make a finding based upon the standards and shall file a report with the committee on finance and personnel, listing the name of the employe and the reason or reasons for the exception, such report to be filed within 15 days of such action.

b. In the event that a city employe weds an employe of another jurisdiction which also has a residency requirement, mandating that its employe reside within that jurisdiction's boundaries, and if that employment is in effect at the time of the marriage, the city service commission may grant the city employe an exemption from the city's residency requirements, provided that the following conditions are and remain in effect:

b–1. That the other jurisdiction is willing to enter into an appropriate reciprocity agreement with the commission concerning such transactions.

b–2. That the city employe actually resides with his or her spouse in the spouse's jurisdiction.

b–3. That both employing jurisdictions retain their respective residency policies.

b–4. That the response time required for the exempted employe to arrive at work in emergency situations be reasonable as determined by the commission.

b–5. That the residency requirements of the other jurisdiction would preclude the married couple from living in the city of Milwaukee.

### 1. Plain Meaning

The court agrees with Cardenas in reading § 5–02.7 to imply that the FPC may grant other hardship exceptions besides those arising from marriage. Section 5–02.7 of the MCC appears to permit the FPC to grant two types of hardship exceptions: permanent exceptions for marriage, and temporary exceptions for reasons not specified in the MCC. Section 5–02.7(b) permits the FPC to grant an "exemption"—as opposed to an exception—for marriage. This use of the word "exemption" implies a complete or permanent exception to the residency requirement. In addition, logic dictates that a marriage exception may be permanent—marriage is, hopefully, a permanent arrangement.

■ As for "temporary exceptions," § 5–02.7(a) refers to "standards hereafter enumerated," which the FPC may consider for those requests. In the Summary, FPC contends that since the only standard enumerated in § 5–02.7 relates to the marriage exemption, § 5–02.7(b)(1–5), it cannot consider any other type of exception. This reading is incorrect. Section 5–02.7(b)(1–5) are "conditions," and therefore cannot be the "standards hereafter enumerated" mentioned in 5–02.7(a). "When the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *O'Gilvie v.*

*United States*, 519 U.S. 79, 96, 117 S.Ct. 452, 136 L.Ed.2d 454 (1996) (citing 2A N. Singer, Sutherland on Statutory Construction § 46.07 (5th ed.1992 and Supp.1996)). Thus, plain meaning prevents the court from passing over this use of different terms.

### 2. Legislative History

The legislative history of § 5–02 shows that "standards hereinafter enumerated" refers to the "review standards" listed in § 5–02.8. In 1975, §§ 5–02.7 and 8 were incorporated into the MCC; however, § 5–02.7 did *not* include subsection (b), the marriage exemption. Ch. Ord. 427, File # 73–2118–a, Nov. 11, 1975. In its original contemplation § 5–02.7(a) was directly followed by § 5–02.8. *Id.* Therefore, the "standards hereafter enumerated" were the "review standards" in § 5–02.8. The marriage exemption was added in 1997 as § 5–02.7(b). The analysis accompanying the marriage exemption states that the charter ordinance incorporating § 5–02.7(b) into the MCC "adds provisions for special hardship exceptions involving marriage between employes of 2 different jurisdictions." Ch. Ord. 427, File # 941973, Dec. 17, 1996; eff. Mar. 10, 1997. Hence, the drafters did not intend for the marriage exemption to be the *only* hardship exception that could be granted by the FPC; the marriage exemption must be construed as being a special hardship exception handled not under the review standards of § 5–02.8 but under its own conditions listed in § 5–02.7(b)(1–5).

### B. Section 5–02.8 "Review Standards"

Section 5–02.8 states:

REVIEW STANDARDS. a. The following factors may be considered by the city service commission in deciding to grant or not to grant an exception to the residence requirement:

a–1. Availability of persons eligible.

a–2. Requisite technological or professional education.

a–3. Responsibility of the job.

a–4. Quantity of persons eligible.

a–5. Quality of the service to be performed.

a–6. Ability to supervise.

a–7. Need to know conditions within the city.

a–8. Diminution of absenteeism and tardiness.

b. This attempt to establish standards for exceptions of the residency requirement recognizes that such standards need not be specified with exactitude. It further recognizes that mere eligibility and availability does not necessarily offer the range of selection which will contribute to the development of the best service.

The FPC argues that § 5–02.8 is a business necessity exception that "permits the FPC to grant an exception … when an exception is necessary to fill a particular position or positions in the civil service in order to 'contribute to the development of the best service.'" (Summary at 4.) The FPC, however, fails to provide any support for its interpretation.

*1. Plain Meaning*

The face of § 5–02.8 indicates a broad application is needed, not one limited to the hiring of civil servants for business necessity. The standards enumerated in § 5–02.8(a) "may" be considered, implying that the FPC could consider other factors as well. This comprehensive discretion is underscored by § 5–02.8(b) which states "that such [review] standards need not be specified with exactitude."

The FPC seemingly based its business necessity interpretation on the second sentence of § 5–02.8(b) which states "[the City] further recognizes that mere eligibility and availability does not necessarily offer the range of selection which will contribute to the development of the best service." While the court agrees with the FPC's reading that § 5–02.8 permits a business necessity exception, the court

does not follow the FPC's leap from this statement to the conclusion that § 5–02.8 provides *only* a business necessity exception. Section 5–02.8(b) merely states that residency will not be an absolute bar against the City's employment of otherwise qualified persons.

*2. Legislative History*

For reasons stated above, § 5–02.7 must be read in conjunction with § 5–02.8 to be consistent with the original intent of the drafters. Therefore, § 5–02.8 provides the standards that the FPC may consider in addressing requests for hardship exceptions. Again, the use of the plural word, "exceptions," implies that more than one type may be granted by the FPC. If § 5–02.8 provided only a business exception as argued by the FPC, then "exceptions" is nonsensical. The court will construe each term of a statute to have meaning. "[The courts] are to 'give effect, if possible, to every clause and word of a statute.'" *United States v. Wagner*, 29 F.3d 264, 266 (7th Cir.1994) (quoting *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955)). As such, the FPC's interpretation is unreasonable. Therefore, the court requires the FPC to examine the merits of Cardenas' request with the review standards in § 5–02.8 as guidance.

### CONCLUSION

Plaintiff Ricardo J. Cardenas' motion for summary judgment is **GRANTED** with regard to plaintiff's state law claim for certiorari review.

The court **REMANDS** this action to defendant Fire and Police Commission of the City of Milwaukee for further proceedings resulting in a finding to be submitted to the court consistent with this opinion.

The court retains jurisdiction over this action for purposes of any review necessary after remand.

Because there is no reason to maintain this file in active status, the Clerk of Court

is instructed to submit a form JS–6 to the Administrative Office, thereby closing this action for statistical purposes.

Any party may reopen this action by making an appropriate motion.